## N. Y. COMMON PLEAS.

MARY BRADLEY, administratrix, agt. NESTOR DE GOICOURIA.

*Landlord and tenant — Constructive eviction — Facts which establish such eviction and relieve tenant from paying rent.*

In a suit for rent claimed to be due from a tenant of a suite of rooms in an apartment house, it appeared that defendant's wife and servants were taken sick by inhaling a malarial or poisonous gas in the apartments occupied by them; that this unhealthy condition of the apartment was owing to the defective condition of the general plumbing work of

Bradley agt. Goicouria.

the house, of which the landlord was notified by orders he received from the board of health, requiring him to have changes made in the plumbing work, and which unhealthy condition could have been removed if he had complied with those orders; that the defendant waited for two weeks, and, finding that nothing was done on the part of the landlord, left, under the apprehension that he was imperiling the health of himself and family by remaining.

*Held*, that this state of facts established a constructive eviction, and prevention of the free enjoyment of the apartments, so as to relieve the defendant from paying rent for them.

*General Term, May*, 1884.

*Thomas C. Ennever*, for appellant.

*Condert Brothers*, for respondents.

DALY, *C. J.*— This was an apartment house known as the Oakland Flats, the general duty of keeping which in repair was upon the landlord, and not upon the tenants of the separate apartments, each tenant being answerable only, under the covenant in his lease, for such repairs as were necessary in his separate apartments or suite of rooms occupied by him. It was the duty of the landlord to keep the general plumbing work of the house in repair; and the defendant, as the occupant of a separate suite of apartments, was bound only to make such repairs in the plumbing therein as required no change in or was independent of the general plumbing work of the house.

It was proved by the defendant's witnesses that the defendant's wife and servants were taken sick by inhaling a deleterious gas, which permeated the defendant's apartments, and which did so, not from any neglect by him to make such repairs as were incumbent upon him, but from the defective condition of the general plumbing work of the house. The physician attributed the illness of defendant's wife as well as of two of his servants to what he described as "bad hygienic surroundings and bad drainage." He said that the situation of the apartments was good, and that there was sufficient cold fresh air in

the water closet, but it was, he said, the bad hygienic sur-
roundings, by which, he said, he meant that the sewer gas
was not properly carried off, and came back into the house.
He testified that when he examined the trap in the house,
during his second visit in May, he smelt a very bad odor,
as if the sewerage was not carried off. He came to
this conclusion, he said, after he had investigated all the
causes that might produce malarial fever and sore throat of
the defendant's wife, and the malignant sore throat of one of
the servants. Having come to this conclusion, the physician
sent a note to the board of health, in consequence of which
a physician, Dr. Nevlis, was sent by the board to examine the
house, who found, as he said, that there was no inlet air pipe,
and no main house traps or sewer fixtures, and no proper ven-
tilation to prevent siphonage and suction from the traps;
siphonage being described by the witness as " the exhaustion
or suction of water from a trap, leaving it unsealed by the
water, and permitting the sewer gas to pass into the rooms
the same as if the trap were lying open." The tendency, he
said, from the want of what he called " back airing in the
general arrangement of the plumbing of the house " would be
for the gas to generate in the sewer and pass in the pipes
through the building, and, in case any defect existed, into the
rooms, and he considered the manner of the construction of
the pipes dangerous, as it might tend to produce siphonage.

An order was made by the board of health requiring the
landlord to have certain changes made in the general plumb-
ing work of the house, among which he was directed to ven-
tilate and complete the trap of the basins in the apartments
occupied by the defendant, which were required to be venti-
lated above the house by a two-inch pipe extending two feet
above the roof. This order was made about the middle of
May, but nothing was done by the landlord, and on the last
of May, two weeks after the order was given, the defendant
removed from the apartments.

On the twenty-second of June, more than a month after the

order was given, the board of health sent an inspector to the flats to see if the order had been obeyed, who reported that none of the details or requirements had been complied with, and it was not until some time in July, after a second inspection, that a report was made that the order of the board of health had been complied with.

The plaintiff called as witnesses an architect, a plumber, a physician and the janitor of the building, who controverted the testimony of the witnesses of the defendant in many substantial particulars; but we must assume, upon all questions of fact upon which there was any conflict, that the jury from their verdict believed the witnesses of the defendant. We must assume, therefore, upon the testimony of the defendant's witnesses, that the illness of the defendant's wife and servants was due to a malarial or poisonous gas in the apartments occupied by them; and that this unhealthy condition of the apartments was owing to the defective condition of the general plumbing work of the house, of which the landlord was fully notified by the orders he received from the board of health, and which could have been removed if he had complied with those orders, as he was bound to do. That the defendant waited for two weeks, and finding that nothing was done on the part of the landlord, that he left under the justifiable apprehension that he was imperiling the health and possibly the life of himself and his family by remaining.

This state of facts established a constructive eviction. If a tenant is deprived, by the wrongful act of the landlord, of the beneficial use of the premises, and is compelled thereby to quit and abandon them, it amounts to what has been called a constructive eviction, and the tenant is thereafter relieved from the payment of rent (*Dyett* agt. *Pendleton*, 4 *Cow.*, 501; 8 *id.*, 727; *Edgerton* agt. *Paige*, 1 *Hilt.*, 320; *Id.*, 20 *N. Y.*, 221; *Cohen* agt. *Dupont*, 1 *Sand.*, 260; *Halligan* agt. *Wade*, 21 *Ill.*, 470; *Preston* agt. *Jones*, 2 *Tred. Eq.*, 350; 6 *Bac. Abr. Rent*, L., 44; *Taylor's Landlord and Tenant*, 378).

The unhealthy and perilous condition of the apartments occupied by the defendant, and the landlord's neglect for two weeks to do what the board of health required him to do, was, in my opinion, as good a ground for the defendant's quitting the apartments, after he had waited for a fortnight for the landlord to comply with the order of the board of health, as the landlord bringing lewd women upon the premises, as in *Dyett* agt. *Pendleton* (*supra*), or the landlord or his family constantly muffling the defendant's door bell so as to prevent his knowing when visitors called upon him, as in *Cohen* agt. *Dupont* (*supra*).

The first case was an act of immorality on the part of the landlord, the second an unjustifiable annoyance of the defendant in his business as a dentist, and the wrongful act of the landlord in the present case was compelling the tenant to occupy the premises at the peril of his health, and possibly of his life, by neglecting to do what the landlord was ordered to do by the public authorities, and which it was incumbent upon him to set out about doing at once if he expected his tenant to remain in the premises. Having remained there a fortnight afterwards and nothing being done the defendant, in my opinion, was justified in quitting and abandoning the apartments; and being abandoned under such a state of facts it amounts in law to a constructive eviction as fully, in my judgment, as did the facts in the cases above cited.

The question in the case was fairly put to the jury by the judge. He said that if the illness of the defendant's wife was caused by the unhealthy sanitary condition of the house, which was not a new escape of sewer gas, but the result of a defect in the construction which rendered the escape of gas in the closet a permanent thing, so that the apartments became unfit for occupancy and dangerous to life, that the defendant had a right to remove from the apartments, and was thereafter discharged from the payment of rent; that the question, therefore, upon the evidence was whether there had been such a constructive eviction and prevention of the free enjoyment of

Bradley.agt. Goicouria.

the apartments as to relieve the defendant from paying rent for them.

The jury found that there was, and I think that the judgment entered upon the verdict should be affirmed.

LARREMORE, *J.* — Legislative enactments have repeatedly narrowed and controlled the conventional relation of landlord and tenant as established by the common law. Prominent as a subject of recent consideration is that of "hygiene," which seems to imply that all premises that are demised should be in a healthful condition. A board of health in this city supervises and directs action in this respect, and courts of justice cannot ignore its action. Whatever, under its direction, conduces to public health and safety must be regarded as a necessary police regulation and enforced accordingly.

In this case the verdict of a jury has established the fact of a constructive eviction of the premises in dispute, and, notwithstanding the doubt of the learned appellate court of the first instance as to the rule of law, I incline to the belief that cases of this character must hereafter be decided upon the distinctive facts as presented by the whole evidence in each particular case.

I find no reason to disturb the verdict of the jury, and think the judgment appealed from should be affirmed, with costs.

BEACH, *J.* (*dissenting*) —There seems to be no support for this judgment in legal principle. The defendant has occupied the premises and taken a new lease. He moved out before the expiration of the term, and defends this action for rent, because the premises were rendered untenantable from sewer gas.

There was no implied warranty by the landlord that these premises were tenantable. The principle has been so often adjudicated as to render useless any citations of authority. The record contains no evidence of any fraud by the landlord by way of inducing the leasing, and the case is conceded not to be within any provision of the act of 1860. Neither is the

landlord shown to have created any nuisance adjacent to the demised premises, or done any act preventing the tenant from an enjoyment of possession (*Dyett* agt. *Pendleton*, 8 *Cow.*, 728; *Edgerton* agt. *Paige*, 1 *Hilt.*, 320; *Id.*, 20 *N. Y.*, 281; *Cleves* agt. *Willoughby*, 7 *Hill*, 83).

The presence of sewer gas in the demised premises does not of itself constitute an eviction, and it is no defense to an action to enforce payment of rent. The landlord is not, from its prevalence, connected with or responsible for its entry or continuance.

The reasoning of the learned justice in *Sutphen* agt. *Seebrass* (*May general term*, 1883) is applicable to this case. In *Francke* agt. *Newmans* (17 *Week. Dig.*, 252), the decision seems to have been founded on the act of 1860. Justice BRADY says : "It is not necessary, therefore, to sustain the judgment in this case, to resort to any other act than that after tenancy commenced there was such a change, according to the testimony on the part of the plaintiffs, in the condition of the cellar that the house became untenantable, and for this reason, as already suggested, the statute of 1860 applied, and the tenant had a right to abandon the premises."

Since the decision of this appeal by the general term of the city court, the subject has again been before that tribunal. The learned opinion of justice HAWES, in *Chadwick* agt. *Woodward*, present an extended review of the authorities and renders further elaboration needless. The conclusion reached by the learned justice is unassailable, in my opinion, and accords with the law I have briefly stated.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.