### DALY *v.* WISE.

*(Common Pleas of New York City and County, General Term.* December 30, 1889.)

LANDLORD AND TENANT—UNFURNISHED BUILDING—DEFECTIVE PLUMBING.

    On a covenant to pay rent, for an unfurnished house, the landlord may recover where the tenant, after occupying the premises some time, quits on account of defective plumbing of which the landlord had no knowledge.

Appeal from district court.

Action by Maria L. Daly against John S. Wise, to recover rent. On trial in the district court, judgment was rendered for defendant, from which plaintiff appeals.

Argued before VAN HOESEN and BOOKSTAVER, JJ.

*Daly, Hoyt & Mason,* for appellant. *J. Seargant Cram,* for appellee.

PER CURIAM. No objection was made to the admission in evidence of the report made by the sanitary inspector to the board of health, and therefore we are not called on to express any opinion as to the right of the defendant to use documents of that description in maintaining his defense. That this case was wrongly decided by the justice admits of no doubt whatever. The landlord was not bound to repair. No fraud or deceit is charged. It is conceded that the defects in the plumbing, whatever they were, were not known to the landlord. The defendant was told before the lease was made that "the landlord was very stiff, and was determined not to put in anything new." It is clear that the defects were not patent, for it is proved that the olfactories of the defendant and his family were not unpleasantly assailed till some time after they had become occupants of the house. If a foul smell had been perceptible to any one who entered the building, the defendant must have discovered it in making his examination of the house with a view to hiring. The case, therefore, is a simple and familiar one. A tenant hires an unfurnished house, and soon after moving in discovers that the plumbing is defective. Thereupon he quits the house, and declares the lease to be null and void. Can he lawfully do so? The justice decided that he may. That decision is in violation of the well-settled law of this state. Such a decision would never have been dreamed of if the defect in the house had been anywhere else than in the plumbing. The two words "sewer gas" have not

yet entirely upset the law of landlord and tenant, notwithstanding the repeated efforts that have been made to bring about such a result. The law of New York is that there is no implied warranty that demised premises are tenantable. *Mayer* v. *Moller*, 1 Hilt. 491; *Cleves* v. *Willoughby*, 7 Hill, 83. A recovery may be had upon the covenant to pay rent, unless the tenant has been evicted, or has rescinded the contract of letting because of the landlord's fraud. Of course, fraud cannot be charged where an intent to deceive does not exist. The *scienter, i. e.*, a guilty knowledge and a deceitful intent, must be alleged and proved, wherever fraud is relied on as a ground of action or of defense. The defense in this case is not fraud, for the innocence of the landlord is conceded.

Nor is there any reason for the contention that the tenant was evicted, either actually or constructively. He left of his own free will, though no act of the landlord interfered with his enjoyment of the premises. The landlord, instead of preventing him from the full enjoyment of the dwelling, went beyond the line of duty marked out by the law, and volunteered to remove the defects in the plumbing. No delay or procrastination could be complained of, for such was the promptitude of the landlord's action that the tenant's wife pleaded for delay. It is not pretended that the landlord in any way invaded the demised premises, and excluded the tenant from the possession or enjoyment of any part of the thing demised. It is plain, therefore, that there was no actual eviction. It is quite as clear that there was no constructive eviction. It has been held that there is a constructive eviction where the landlord maintains, upon his own premises, a nuisance that seriously interferes with the tenant's enjoyment of the demised premises, when all are under the same roof. The entertainment of prostitutes upon his own premises by the landlord, (*Dyett* v. *Pendleton*, 8 Cow. 727,) and the keeping of the wastepipes in the landlord's premises in so defective a condition that foul· odors from them penetrated the tenant's apartments, and made them uninhabitable, (*Bradley* v. *De Goicouria*, 12 Daly, 397,) were cases in which the act charged upon the landlord was the maintenance of a nuisance on his own premises that deprived the tenant of the enjoyment of the demised premises. This case is not of that description. Here there is no complaint that the maintenance by the landlord of a nuisance interfered with the tenant's possession, but it was the landlord's nuisance that led to the decision in *Bradley* v. *De Goicouria*, *supra*, a case that seems to have been greatly misunderstood, though the point decided is clearly stated in the opinion of the chief justice, from which we quote: "If a tenant is deprived, by the wrongful act of the landlord, of the beneficial use of the premises, and is compelled thereby to quit and abandon them, it amounts to what has been called a ' constructive eviction.' " What wrongful act of this landlord deprived this tenant of the beneficial use of these premises. Evidently, *Bradley* v. *De Goicouria* gives no support to the defense. The case of *Lawrence* v. *Burrell*, 17 Abb. N. C. 312, was decided in the city court, and is so palpably erroneous that no time need be spent in exposing its errors. The case of *Wilson* v. *Finch-Hatton*, L. R. 2 Exch. Div. 336, upon which the tenant relies, has no bearing upon the point in controversy. That case was decided with special reference to its own peculiar circumstances, and it was not intended to disturb the settled rules of law governing demises of real property. Sir FITZROY KELLY, C. B., said: "The question we have to determine is whether, on an agreement of this nature, which is an agreement for the letting and hiring of a house in what is considered a fashionable district, at a high rent, for three months at the height of the season, if the house prove not merely not habitable, and not reasonably fit for occupation, but in some respects so unsuitable for the accommodation of those who intend to occupy it that they could not reside in it, even for one night, without danger to their health, * * * the hirer of that house is at liberty to consider the agreement at an end, * * *

and resist all demands for rent." The drains in the house were bad, and under the rooms in the basement a deposit of fæcal substance was found. The landlord was willing to repair the drains, but it would have taken a considerable part of the term of the demise to do the work, and the tenant refused to retain possession or to pay the rent. The turning point of the case was that the house was a furnished house. Said Chief Baron KELLY: "The circumstances in which furnished houses are, and those in which real property is, demised differ very greatly. Where real property, such as a house and lands, is taken by a tenant in a state so dilapidated as to require a large expenditure of money to put it into repair, to hold that the contract contained an implied condition that the lessor should put such premises into repair would be clearly contrary to the intention of the parties. When, however, a person takes a furnished house for a brief period of time, it is clear that he expects to find it reasonably fit for occupation from the very day on which he intends to enter, and the lessor is well aware that this is the view entertained by the tenant." Again he says: "There is an implied condition that a furnished house shall be in a good and tenantable condition * * * from the very day on which the tenancy is dated to begin." Baron POLLOCK said: Looking at the subject-matter, it is clear that such a contract does not come within the rules laid down in the judgment in *Jones* v. *Just*, L. R. 3 Q. B. 202; "but although, in the case of a furnished house, many of the incidents which attach to a demise of realty may be applicable, inasmuch as the rent does, in a sense, issue out of the realty, still the rent paid for a furnished house, such as this, is not merely rent for the use of the realty, but a sum paid for the accommodation afforded by the use of the house, with all its appurtenances and contents, during the particular period of three months for which it is taken." Baron HUDDLESTON said: "I think there is an implied condition that the furnished house * * * shall be reasonably and decently fit for occupation;" and he cited the opinion of SHAW, C. J., in *Dutton* v. *Gerrish*, 9 Cush. 94, to the effect that there is an implied warranty that furnished lodgings in a lodging-house are fit for such use. It is evident that the case of *Wilson* v. *Finch-Hatton* is not applicable to this case, and that it was not intended to disturb the law of real property, or to hold that there is an implied covenant that a dwelling, unfurnished, is fit for occupation. By our law, the right of the plaintiff to a judgment is incontestable. We have looked at the cases cited by the justice in his opinion, and none of them, save those we have commented upon, have any bearing upon the question in controversy. The judgment of the district court must be reversed.