(120 App. Div. 490)

### KRAUSI v. FIFE.

(Supreme Court, Appellate Division, Second Department. June 14, 1907.)

1. LANDLORD AND TENANT—EVICTION—UNTENANTABLE CONDITION OF PREMISES.

A defective plumbing system in a flat house, causing waste water discharged from sewer-connected fixtures on the floor above to back up into a tenant's bath tub and allowing an open passageway for sewer gas to enter through the trap, and such a defective hot-water system that nothing but tepid water could be obtained, were substantial evils, and constituted an eviction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 100.]

2. SAME—TERMINATION OF LEASE—EVICTION—WAIVER.

A tenant had a reasonable time within which to abandon premises after becoming aware of a continuing nuisance amounting to a constructive eviction, and his remaining in possession under his lease for five months did not amount to a waiver of his right to terminate the con-

trnct, where the landlord was apparently attemping from time to time to remedy the defects.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, § 713.]

Appeal from Municipal Court, Borough of Brooklyn, Fourth District.

Action by William J. Krausi against George Buchanan Fife. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, MILLER, and GAYNOR, JJ.

J. J. Kramer, for appellant.
Joseph W. Welsh, for respondent.

JENKS, J. I think that there was an eviction. The defendant leased an apartment in a flat house. His bathroom adjoined his bedroom. There was but one plumbing system and but one hot-water system for the house. Both were defective. Whenever waste water was emptied from the bath tub in the apartment above, a small part of it was discharged into the bath tub of the tenant. Part of the waste water from his stationary washstand also came into his bath tub; and waste water, whenever emptied from the stationary wash basin in the apartment above, bubbled up in the tenant's stationary wash basin. He could obtain no hot water for any purpose. It was only luke warm. His constant complaints were heeded, so that the landlord sent his plumber at various times, who worked to remedy these defects, but without success. Then, after a period of more than two months, the tenant moved out for his subtenant. The latter found the same conditions, and her complaints, though likewise heeded, did not result in any change of the conditions, and after three months or more she abandoned the apartment. She testifies that her going was upon the command of her physician, as soon as he was told of the condition of things. An inspector of health inspected the apartment two days before her going. He testifies that, when the discharge from the sewer-connected fixtures on the upper floor or the floor above it was discharged, it backed up into the bath tub in the third floor, and also that the trap of the wash basin in the bath room and the trap of the dressing room "syphoned"; i. e., the flow of water discharged from each of the fixtures, or separately discharged from each of the fixtures, would empty the water out of the trap, leaving an open passageway for the discharge of the sewer air from the sewer to the apartment.

These were to my mind not petty annoyances. To have nothing but tepid water for any purpose was a great drawback. To clean people the fact that their bath tub and their wash basins were in effect the cisterns for part of the soiled water discharged from their neighbors' use must have been intolerable. To live in a house where the defective plumbing permitted the upflow of sewer gas is to invite disease. The evils were substantial, and like unto those which mark the cases of Sully v. Schmitt, 147 N. Y. 248, 41 N. E. 514, 49 Am. St. Rep. 659, and Bradley v. De Goicouria, 12 Daly, 393, 14 Abb. N. C.

53. The rule of the latter case cited applies to the case at bar. In that the court held:

"The general duty of keeping which in repair was upon the landlord, and not upon the tenants of the separate apartments; each tenant being answerable only, under the covenant in his lease, for such repairs as were necessary in his separate apartment or suite of rooms occupied by him. It was the duty of the landlord to keep the general plumbing work of the house in repair; and the defendant, as the occupant of a separate suite of apartments, was bound only to make such repairs in the plumbing therein as required no change in or were independent of the general plumbing work of the house."

The point is made that the continuances of occupancy were a waiver of any right to terminate the contract. The tenant was entitled to a reasonable time within which to abandon the premises. I think that the point is not well taken, in consideration of the fact that the landlord was apparently attempting from time to time to remedy the defects complained of, and that finally both a physician and a health inspector virtually determined that the premises were positively dangerous. Marks v. Dellaglio, 56 App. Div. 299, 67 N. Y. Supp. 736.

The judgment should be affirmed, with costs. All concur.