GOLDBERG v. LLOYD.

(Supreme Court, Appellate Term.   May 15, 1908.)

1. LANDLORD AND TENANT—CONSTRUCTIVE EVICTION—WAIVER.
    A tenant remaining in possession of the premises, notwithstanding the failure of the landlord to repair and make them tenantable, until repairs are made by the landlord, waives his right to claim a constructive eviction by reason of the want of repairs.

2. SAME—DUTY TO MAKE REPAIRS—STATUTES.
    Real Property Law, Laws 1896, p. 589, c. 547, § 197, authorizing a lessee to surrender the premises on the building becoming untenantable, etc., does not apply where the lease requires the tenant to make repairs.

3. SAME.
    Ordinarily the tenant is under an implied covenant to make such odinary repairs as are necessary to prevent waste and decay of the premises, unless the landlord expressly covenants to make such repairs; and the fact that a lease specifies in what cases the tenant shall make repairs does not alone exempt him from the obligation to repair in other respects.

4. SAME.
    A lease of an apartment in an apartment house, which stipulates that the tenant shall take care of the apartment and fixtures and make all repairs at his own cost, imposes on the tenant the duty of keeping the apartment in repair; but the landlord cannot create a nuisance by refusing to repair such parts of the apartment house as he may keep under his own control.

5. SAME.
    The landlord of an apartment house, who retains control of everything that is common to the whole building, and of which each individual tenant of portions thereof has the use and beneficial enjoyment, such as hallways, elevators, heating apparatus, and general plumbing work, is required to keep such portions and appliances in a state of repair, though there is no express agreement on his part in reference thereto.

6. SAME—EVICTION—GROUNDS—EVIDENCE.
    A lease of an apartment in an apartment house required the tenant to keep the apartment and fixtures, including plumbing work, in repair.   The bowl in the toilet wabbled from side to side, and sediment had to be washed up several times a day to prevent odor.   The evidence did not show whether the collection of the sediment was due alone to the plumbing in the apartment of the tenant, or whether the unsanitary condition was due to defect in or want of repair of the general plumbing of the house.   Held insufficient to show a constructive eviction of the tenant.

Appeal from Municipal Court, Borough of Manhattan, Fourteenth District.

Action by Abraham Goldberg against Robert H. Lloyd.   From a judgment of the Municipal Court in favor of defendant, plaintiff appeals.   Reversed, and a new trial granted.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and GREENBAUM, JJ.

Selig Edelman, for appellant.
Abraham Greenberg, for respondent.

GIEGERICH, J.   The action is to recover the last two months' rent for the top floor of the premises known as No. 11 West 102d street; borough of Manhattan, under a written lease for one year from October 1, 1906, to September 30, 1907, at the annual rent of

$480; and payment is resisted on the ground that the premises were suffered by the plaintiff to become untenantable and unfit for occupation, and that in consequence thereof the defendant was compelled to move from the premises on or about July 17, 1907.

The defendant adduced testimony to the effect that the roof leaked, that the awnings attached to the windows of the flat were broken from their fastenings, and that the front door of the corridor was permitted to remain open all night, by reason of which the defendant and his family became alarmed lest his apartments be entered by thieves. Assuming, without deciding, that the plaintiff was required to make such repairs, and to see to it that the front door was kept closed, his failure to do so need not be considered, in view of the uncontradicted evidence that the particular matters just mentioned had been remedied or did not exist when the defendant vacated the premises. The defendant, by thus remaining upon the premises, waived whatever right he may have had by reason of these matters to claim a constructive eviction, Kinney v. Libbey, 54 Misc. Rep. 595, 104 N. Y. Supp. 863; Jackson v. Paterno (Sup.) 108 N. Y. Supp. 1073.

There are other objections, however, that are claimed not to have been waived and that require consideration. The defendant's wife testified, without contradiction, that the bowl in the toilet "wabbled from side to side and that the sediment had to be washed up on an average of five or six times a day in order to keep the odor down," which, the witness said, "was something terrible," and that in consequence thereof they moved out. This testimony was received without objection on the part of the plaintiff. The plaintiff urges in support of the appeal that under the terms of the lease the defendant was required to make all repairs and that the unsanitary condition of the apartment was due solely to his failure to do so. If this be so, then section 197 of the real property law (chapter 547, p. 589, Laws 1896) does not apply to the present case. That section provides:

"Where any building which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

The statute of 1860 (Laws 1860, p. 592, c. 345), contained substantially similar provisions. These enactments have been held not to apply to a case where the defect existed when the lease was made, and no fraud or misrepresentation is shown on the part of the landlord, or when it results from the neglect of the tenant to make ordinary repairs, or from deterioration due to the ordinary use of the tenant. Suydam v. Jackson, 54 N. Y. 450; Franklin v. Brown, 118 N. Y. 110, 23 N: E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744; Daly v. Wise, 132 N. Y. 306, 30 N. E. 837, 16 L. R. A. 236; Sherman v. Ludin, 79 App. Div. 37, 79 N. Y. Supp. 1066.

Now, what repairs, if any, was the tenant required to make in this case? The lease in suit required the tenant, the defendant, to "take good care of the apartment and fixtures, and suffer no waste or

injury, *. * * and at his own cost and expense make and do
all repairs required to walls, ceilings, paper, glass, and glass globes,
plumbing work, ranges, pipes, and fixtures belonging thereto, when-
ever damage or injury to the same shall have resulted from misuse
or neglect." The defendant advances the argument that, since the
lease specified in what cases he should make repairs, he is not re-
quired to do any unless they arise from some of the causes thus enu-
merated, and that, as it has not been shown that the unsanitary con-
dition of the apartment was due to either of said causes, the duty of
making repairs devolved solely upon the plaintiff.

Such enumeration alone, however, would afford no ground for
claiming exemption from the obligation to repair in these respects
if he was otherwise required to do so. Lynch v. Sauer, 16 Misc. Rep.
1, 3, 37 N. Y. Supp. 666. Ordinarily, unless the landlord expressly
covenants to make the repairs, and it is not claimed that the plaintiff
did so in this case, the tenant is under an implied covenant to make
such ordinary repairs as are necessary to prevent waste and decay of
the premises. Suydam v. Jackson, 54 N. Y. at pages 453, 454. Earl,
C., in one of the opinions of the court in the case last cited, after
showing the mischief the act of 1860 was intended to remedy, sums
up, at page 454 of 54 N. Y., the tenant's duties under such implied
covenant in these words:

"He is bound, therefore, to keep the soil in a proper state of cultivation, to
preserve the timber, and to support and repair the buildings. These duties
fall upon him without any express covenant on his part, and a breach of
them will, in general, render him liable to be punished for waste. The
lessee was not bound to make substantial, lasting, or general repairs, but only
such repairs as were necessary to prevent waste and decay of the premises.
If a window in a dwelling should blow in, the tenant could not permit it to
remain out, and the storms to beat in and greatly injure the premises, with-
out liability for permissive waste; and if a shingle or board on the roof should
blow off or become out of repair, the tenant could not permit the water, in
time of rain, to flood the premises, and thus injure them, without a similar
liability. He being present, a slight effort and expense on his part could save
a great loss; and hence the law justly casts the burden upon him."

Applying these principles to this case, it will be seen from a read-
ing of the lease that, so far as that portion of the separate apartment
of the defendant which was not within the plaintiff's control is con-
cerned, the former's obligation to repair under such implied cove-
nant may be regarded, so far as concerns the questions under con-
sideration, as substantially the same as those he assumed under the
terms of the lease. Such obligation on the tenant's part did not, how-
ever, authorize the landlord to create a nuisance by refusing to repair
such parts of the apartment in suit as he may have kept under his
own control. Sully v. Schmitt, 147 N. Y. 248, 253, 41 N. E. 514, 49
Am. St. Rep. 659. As the defendant rented only a portion of the
apartment house, a rule different from that applying to the hiring by
one person of a whole house seems to obtain. Bradley v. De Goi-
couria, 12 Daly, 393; Tallman v. Murphy, 120 N. Y. 345, 24 N. E.
716; Tallman v. Earle, 3 Misc. Rep. 76, 23 N. Y. Supp. 17; Novem-
ber v. Wilson, 49 Misc. Rep. 533, 97 N. Y. Supp. 989; Krausi v.
Fife, 120 App. Div. 490, 105 N. Y. Supp. 384; 2 McAdam's Landlord
and Tenant (3d Ed.) p. 1236.

The exception to the general rule that the landlord is under no liability as to the condition of the premises, in the absence of an express agreement on his part in relation thereto, unless there has been fraud, deceit, or wrongdoing on his part (Franklin v. Brown, 118 N. Y. 110, 23 N. E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744; Lansing v. Thompson, 8 App. Div. 54, 40 N. Y. Supp. 425; Sherman v. Ludin, 79 App. Div. 37, 79 N. Y. Supp. 1066), is placed upon the ground that as the landlord of the apartment house has retained charge and control of everything that is common to the whole building, and of which each individual tenant of portions thereof has the use and beneficial enjoyment, such as the hallways, elevators, heating apparatus, and general plumbing work, he is consequently in duty bound to see to it that all such portions of the building and appliances are kept in a state of repair. The case of Bradley v. De Goicouria, supra, affords an apt illustration of the principle that thus underlies the relation of landlord and tenant in the case of apartment houses. There the tenant, in an action to recover rent under a lease of an apartment or suite of rooms in an apartment house, pleaded an eviction from the demised premises by reason of the improper character and condition of the plumbing work and other appliances, in consequence of which the premises became and were untenantable and unfit for use and occupation by the defendant and his family and household, wherefore he vacated the premises. Chief Judge Charles P. Daly, in one of the opinions of the court said (page 395 of 12 Daly):

"This was an apartment house, * * * the general duty of keeping which in repair was upon the landlord, and not upon the tenants of the separate apartments; each tenant being answerable only, under the covenant in his lease, for such repairs as were necessary in his separate apartment or suite of rooms occupied by him. It was the duty of the landlord to keep the general plumbing work of the house in repair; and defendant, as the occupant of a separate suite of apartments, was bound only to make such repairs in the plumbing therein as required no change in or were independent of the general plumbing work in the house."

This doctrine was reaffirmed in Krausi v. Fife, supra, where it does not appear that any special covenants existed. It is therefore impossible to apply with any degree of certainty any of the foregoing or other principles to the present case.

The situation in which the uncertainty of the testimony upon the point under discussion has placed this cause will be better appreciated when we consider that it affords ample grounds for conflicting conclusions, with varying results. Thus, if the collection of sediment was caused by the failure to properly and securely connect the bowl with the waste pipe, then, as such condition could easily have been remedied at trifling expense, the duty of making such repairs in that case would devolve upon the defendant. The same result would follow if the escape of the sediment was due alone to plumbing in the apartment of the defendant, the repairs of which required no change in or were independent of the general plumbing of the apartment house and involved only slight expense. But if the unsanitary condition of the apartment was due to a defect in or want of repair of the general plumbing of the apartment house, then it might be held to be the plaintiff's duty to make such repairs as would abate the nuisance. The judgment

should not rest upon such insufficient and unsatisfactory evidence, and a new trial should be ordered.

The testimony of the janitress of the apartment house, which is relied upon to show that there was a waiver by the defendant of former complaints and a bar to subsequently taking advantage of the conditions that might otherwise have been remedied before he vacated the premises, is open to the same criticism as that of the defendant's wife. According to the testimony of the former, the latter, upon being informed that the plaintiff "was going to fix the toilet," said:

"Never mind. He (referring to plaintiff) don't have to fix anything for me any more."

Upon being asked when the defendant's wife made such statement, the witness replied, "Before she moved," and when questioned how long it was before she moved she answered, "She went in the country and then she came back." This testimony does not appear to have been explicitly contradicted by the defendant's wife, who, however, testified that she "many times" called the attention of the plaintiff and of his agent to the unsanitary condition of the toilet, but that they "never did anything towards repairing it." The testimony of the janitress is open to the objection that it does not appear therefrom, nor does it appear from the testimony of other witnesses, when the defendant's wife went to the country, nor when she returned therefrom. For aught that appears, the alleged conversation with the latter may have taken place long before she made complaint to the plaintiff and his agent as to the unsanitary condition of the apartment, and such subsequent complaints to the plaintiff or his agent may have been due to the janitress' statement to the defendant's wife that "she would tell the agent" when she complained of the leaky condition of the roof.

Since a new trial is to be had, it is suggested for the guidance of counsel that, if any order was issued by the health department relative to the unsanitary condition of the apartment in controversy, the same should be put in evidence, instead of incumbering the record with hearsay statements or the contents thereof. Upon such new trial, also, the obscurity and incompleteness of the testimony upon the salient features above considered can be cured by more persistent questioning.

For the foregoing reasons, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

GREENBAUM, J. (concurring). The constructive eviction as pleaded in the written answer of the defendant is based upon the following specifically alleged untenantable conditions of the premises, to wit: A leaky roof, rattling awnings, and the plaintiff's failure to keep the front door closed. There is no allegation in the answer that the bowl of the water-closet in the bathroom was loose, or that there was an emission therefrom of foul odors. The roof had been repaired before the defendant vacated the premises; hence its previous leaky condition would constitute no ground of eviction. The claim as to the front door merits no serious consideration in the state of the proofs. The awnings were attached to defendant's rooms and for his benefit.

The toilet was in defendant's premises and for his use. In the absence of an express covenant on the part of the landlord to repair, this obligation was upon the tenant. It was the defendant's duty to make these repairs, and he might be held liable for permissive waste, according to some authorities, for failing to make these repairs. Suydam v. Jackson, 54 N. Y. 450, 454. So that, even if the condition of the toilet bowl may be seriously considered, and I am of opinion that under the issues it should not have been regarded as a ground of eviction, there is no proof in this case to sustain the alleged defense. The authorities cited by the defendant as to the conditions existing outside of the rooms rented to a tenant and over which he has no control have no bearing upon this case.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs.