## SCHEFFLER PRESS v. PERLMAN.

(Supreme Court, Appellate Division, First Department. February 19, 1909.)

**1. LANDLORD AND TENANT (§ 125*)—LEASES—IMPLIED WARRANTY OF FITNESS.**

On the leasing of the first loft of a building, though expressly recited, "to be used and occupied for the printing business," there is no implied warranty that it is suitable and fit for the establishment of 12 printing presses running at high speed; but the lessee's rights in that respect must rest entirely on the express covenant, as to which he has the burden of proving a breach, of the carrying capacity of the floor.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 442; Dec. Dig. § 125.*]

**2. LANDLORD AND TENANT (§ 48*)—BREACH OF COVENANT—DAMAGES.**

For breach of covenant in a lease of the carrying capacity of the floor, in consequence of which the lessee moved out, it is entitled as damages to the rent paid in advance, any particular expenses incurred in adapting its plant to the place, and the difference between the rent reserved and the actual rental value of the place, but not to the difference between the rent reserved and that paid for the premises to which it removed.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 116; Dec. Dig. § 48.*]

**3. DAMAGES (§ 142*)—SPECIAL DAMAGES—PLEADING.**

Any special damages from breach of the covenant in a lease as to the carrying capacity of the floor of the leased premises must be pleaded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 413; Dec. Dig. § 142.*]

Appeal from Trial Term, New York County.

Action by the Scheffler Press against David Perlman. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Jacob Manheim (Harry A. Gordon, on the brief), for appellant.

Thomas O'Callaghan (Charles G. Cronin, of counsel), for respondent.

CLARKE, J. The complaint alleges: That the plaintiff is a corporation engaged in the general business of printing, and that the defendant was the owner in fee of the premises known as Nos. 129–133 West Twentieth street. That on January 11, 1905, defendant leased to the plaintiff the first loft of said building for the term of five years at a yearly rental of $2,550, payable in equal monthly payments of $212.50. That the lease contained the following covenant:

"And it is agreed by the said landlord that the carrying capacity of said loft is not less than one hundred and seventy five pounds to the square foot."

That plaintiff took possession of the premises, paid the rent for three months in advance, removed thereto its presses and machinery necessary for the conduct of its business, and remained in possession up to and including the 1st day of March, 1905.

"Sixth. That on or about the 17th day of February, 1905, the duly authorized inspector of the bureau of buildings of the city of New York, borough of Manhattan, aforesaid, visited said premises so leased to and occupied by this plaintiff, and made an inspection and examination thereof, and found and reported to said bureau that the carrying capacity of said floor or loft so leased to and occupied by this plaintiff was only 125 pounds instead of 175 pounds, as specified in said lease and covenanted by said defendant.

"Seventh. That thereupon an order was made by the said bureau of buildings directing the removal of this plaintiff from the said loft as aforesaid, inasmuch as upon such inspection and examination it was discovered that it would be unsafe to human life to longer allow the said plaintiff to occupy said loft, owing to the insufficiency of the carrying capacity as aforesaid.

"Eighth. That plaintiff on or about the 1st day of March, 1905, was obliged to and did remove under the order of the bureau of buildings aforesaid from said loft, and was compelled to and did expend large sums of money in moving into said loft and removing therefrom, and was greatly inconvenienced and annoyed and suffered great loss in its business by and through the failure of the said defendant to carry out the terms, conditions and covenants of said lease as aforesaid, to its damage in the sum of $3,000."

The lease provides:

"That the said landlord has let unto the said tenant, and the said tenant has hired from the said landlord, the loft above the store  *  *  *  for the term commencing the first day of February, 1905,  *  *  *  to be used and occupied for the printing business upon the conditions and covenants following:"

Then follows the covenants as to rent and as to the carrying capacity of the floors as set forth in the complaint.

There is no proof to sustain the allegation of the complaint that an order was made by the bureau of buildings directing the removal of the plaintiff from the loft, as it was discovered that it would be unsafe to human life to longer allow the said plaintiff to occupy the said loft owing to its insufficiency of carrying capacity. No such order was ever made. No satisfactory proof was offered that the carrying capacity of the floor in question was not 175 pounds to the square foot. There is proof that an employé of the building department, upon finding that twelve printing presses were in process of installation, objected that the running of so many presses would produce vibrations, and that the building was entirely unfit for printing house purposes, and he testified that, even if the floor did have the specified carrying capacity, his objection would have been the same, because the building was of a tenement house construction, and not adapted for such purposes. "Not because the floor was good for 175 pounds, or was not good. It is the building's fault; the method of construction of this building.  *  *  *  It was not adapted for machinery at all of any kind." The learned court charged:

"As I read this lease, the condition that the floor space carry not less than 175 pounds to the square foot, taken in conjunction with the statement of what the business was to be, enables me to construe that instrument as being one under which the landlord knew, and therefore contracted, that the premises should be fit for the business of printing."

In Edwards v. New York & Hartford Railroad Co., 98 N. Y. 245, 50 Am. Rep. 659, Judge Earle, writing for the court, said:

"It is a universal rule, to which no exception can be found in any case now regarded as authority, that upon the demise of real estate there is no im-

plied warranty that the property is fit for occupation or suitable for the use or purpose for which it is hired. The only implied warranty in such case is one of quiet enjoyment. In Jaffe v. Harteau, 56 N. Y. 398, 15 Am. Rep. 438, it was held as stated in the headnote, that a lessor of buildings in the absence of fraud or any agreement to that effect is not liable to the lessee or others lawfully upon the premises for their condition, or that they are tenantable, and may be safely and conveniently used for the purposes for which they are apparently intended."

In Franklin v. Brown, 118 N. Y. 110, 23 N. E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744, Judge Vann said:

"It is not open to discussion in this state that a lease of real property only contains no implied covenant of this character, and that in the absence of an express covenant, unless there has been fraud, deceit, or wrongdoing on the part of the landlord, the tenant is without remedy even if the demised premises are unfit for occupation."

He cited a number of cases, among which is O'Brien v. Capwell, 59 Barb. 604, where the court declared that:

"As between landlord and tenant * * * where there is no fraud, false representations, or deceit, and in the absence of an express warranty or covenant to repair, there is no implied covenant that the demised premises are suitable or fit for occupation, or for the particular use which the tenant intends to make of them, or that they are in a safe condition for use."

The foregoing cases are cited and approved in Steefel v. Rothschild, 179 N. Y. 273, 72 N. E. 112.

It would seem, therefore, that the recital in the lease "to be used and occupied for the printing business" could not be construed to contain the implied warranty that the loft in question was suitable and fit for the establishment of 12 printing presses running at a high rate of speed, but that the plaintiff must rely solely upon the express covenant as to the carrying capacity of the floor, and that upon it must rest the burden of showing by competent proof a breach of that covenant.

The court permitted the jury to find as damages the difference between the rent reserved and the rent paid by the plaintiff for the premises to which it removed. The premises in suit were located on Twentieth street. The premises to which plaintiff removed were on Bond street. The premises in suit consisted of one loft. The premises on Bond street consisted of a first floor and basement. No authority is cited to us supporting the rule of damages laid down by the learned court. Such a rule would have permitted the plaintiff to have leased extensive and expensive quarters which it regarded suitable to its business anywhere, and to have charged the defendant with the difference. In Dodds v. Hakes, 114 N. Y. 260, 21 N. E. 398, it is said:

"The term 'damages' is one of very broad meaning, but applied to contracts it is limited to such as may be supposed to have entered into the contemplation of the parties, and flow naturally from the violation of the agreement, and are certain in their nature, having respect to the cause from which they proceed, and speculative profits and accidental and consequential losses are not recoverable. * * * The rule in all cases when damages are claimed solely from the failure of the lessor to give the lessee possession of the leased property is well settled, and limits the plaintiff's recovery to an amount represented by the excess of the actual rental value over the rent

reserved in the lease. Trull v. Granger, 8 N. Y. 115; Pumpelly v. Phelps, 40 N. Y. 60, 100 Am. Dec. 463."

This rule is restated in Friedland v. Myers, 139 N. Y. 432, 34 N. E. 1055, with this addition:

"If the property is leased for a special purpose which is known to the lessor, and possession is refused because of a prior lease to another party, or of other fault of the lessor, the lessee may recover as damages his actual and necessary expenses incurred in preparing for the occupation of the property in the manner contemplated by the parties."

But in such cases the special damage would have to be alleged. Williamson v. Stevens, 84 App. Div. 518, 82 N. Y. Supp. 1047. In Ettlinger v. Weil, 184 N. Y. 179, 77 N. E. 31, an action for deceit, the court said:

"The measure of damages is the difference between the market value of the premises if they had been as represented and their actual market value."

This is the rule in actions for failure to put the lessee into possession; and in actions for deceit there can be no other in such a case as that at bar. If there has been a breach of the agreement that the floor should have the carrying capacity specified, and as a consequence the lessee moved out, it is entitled to the rent paid in advance, any particular expense incurred in adapting its plant to the particular place, and the difference between the rent reserved and the actual rental value of the loft. It was not entitled to the difference between the rent reserved and that paid for the new premises, first, because such special damage was not alleged; and, second, because such damage was not in the contemplation of the parties, did not flow naturally from the violation of the agreement, and was not certain in its nature.

The judgment and order appealed from should be reversed, and a new trial granted, with costs and disbursements to the appellant to abide the event. All concur.