### LAWRENCE et al. v. KATCHER.

(Municipal Court of City of New York, Borough of Manhattan, First District. June 25, 1909.)

1. LANDLORD AND TENANT (§ 231*)—ACTION FOR RENT—SUFFICIENCY OF EVIDENCE.

In an action for rent, where defendant claimed that he was constructively evicted from the premises by being deprived of the beneficial use thereof because of bad elevator service furnished, evidence *held* to show that the elevator service was bad, as claimed by defendant.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 231.*]

2. LANDLORD AND TENANT (§ 172*)—EVICTION—CONSTRUCTIVE EVICTION—UNTENANTABLE CONDITION OF PREMISES.

While there is no implied covenant that leased premises are fit for the tenant's purposes, yet where, by the landlord's misfeasance or non-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

feasance, the premises become untenantable for the purposes for which they were let, there is a constructive eviction.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 695–703; Dec. Dig. § 172.*]

3. LANDLORD AND TENANT (§ 171*)—EVICTION—NATURE—"ACTUAL EVICTION" —"CONSTRUCTIVE EVICTION."

Evictions are of two kinds: "Actual eviction," by the landlord or through a title paramount, by which the tenant is actually deprived of the use of a material part of the premises; and "constructive eviction," where the landlord, by acts of omission or commission, deprives the tenant of the beneficial enjoyment of the premises, the character of the enjoyment to which he is entitled depending upon the nature of the building and the purpose for which it was let.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 691–694, 703; Dec. Dig. § 171.*

For other definitions, see Words and Phrases, vol. 1, p. 157; vol. 2, p. 1470.]

4. LANDLORD AND TENANT (§§ 171, 190*)—EVICTION—CONSTRUCTIVE EVICTION —NECESSITY OF ABANDONMENT BY TENANT.

There can be no constructive eviction, unless the tenant abandons the premises; he being liable for rent accruing during his occupancy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 691–694, 765–769; Dec. Dig. §§ 171, 190.*]

5. LANDLORD AND TENANT (§ 190*)—RENT—LIABILITY—EVICTION—PARTIAL EVICTION.

The tenant's liability to pay rent is suspended upon his actual eviction, and when partially evicted he may continue in possession of the remainder of the premises without paying rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. § 190.*]

6. LANDLORD AND TENANT (§§ 172, 190*)—EVICTION—CONSTRUCTIVE EVICTION —INTERFERENCE WITH BENEFICIAL ENJOYMENT.

Defendant rented for a term the top floor of a five-story building for manufacturing purposes, entrance to which was by a single elevator and a narrow unlighted stairway, which was out of repair, and thereafter the elevator service became very poor, and was discontinued altogether for several hours each day at intervals, so that defendant's customers were often compelled to climb the stairs or leave the building without calling upon him, and shipments to and from his factory were greatly inconvenienced and delayed; and after plaintiff's failure to permanently improve the service, as promised, defendant abandoned the premises. Held, that plaintiff's failure to give proper elevator service deprived defendant of the beneficial enjoyment of the premises, so as to amount to a constructive eviction, and hence defendant was not liable for rent accruing after he abandoned the premises.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 695–703, 765–769; Dec. Dig. §§ 172, 190.*]

7. LANDLORD AND TENANT (§ 190*)—EVICTION—CONSTRUCTIVE EVICTION— WAIVER BY TENANT.

Where a tenant is deprived of the beneficial enjoyment of premises, so as to amount to constructive eviction, he has a reasonable time thereafter in which to abandon the premises, depending upon the particular circumstance, so that where the tenant complained of bad elevator service in November, 1908, and improvements were promised and made at intervals, and some improvement in the service was made following another complaint in February, 1909, after which the service became worse than before, and the tenant moved out on March 15th, he abandoned

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the premises within a reasonable time under the circumstances, so as to relieve him from liability for rent accruing thereafter.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. § 190.*]

Action by Lee H. Lawrence and another, as trustees of the estate of Isaac Lawrence, against Arthur D. Katcher. Judgment for defendant.

William C. Davis, for plaintiffs.
Bennett E. Siegelstein, for defendant.

PRINCE, J. The action is brought by the plaintiffs, landlords, against the defendant, tenant, to recover $300, two installments of $150 each, as rent for the months of April and May, 1909, for a loft on the top or fifth floor of the building 498–500 Broadway, in the borough of Manhattan, city of New York, under a written lease, entered into between the parties, whereby the plaintiffs let and the defendant hired the premises in question for the term of five years from February 1, 1905, at a rental of $1,700 per annum for the first two years of the term and $1,800 for the remaining three years. The defendant admits the lease, and pleads affirmatively a constructive eviction by the landlords, and an abandonment of the premises on March 15, 1909, before the installment of rent for April, 1909, accrued.

That the defendant removed from the premises prior to April 1, 1909, is not disputed, and the question involved in this action is whether the defendant sufficiently established his plea of eviction, and was justified in removing from the premises, and whether, by reason of such constructive eviction and abandonment, the defendant is relieved from liability under the lease. The building has five stories, and is let out to tenants for business purposes. The defendant occupied the top or fifth floor. There was maintained in the building for freight and passenger purposes but a single electric elevator, which was operated by an elevator boy, one Robinson, in plaintiffs' employ. In addition to running this elevator, he was charged with the duty of superintending the building, of operating a steam plant in the basement, of keeping the halls and stairs of the building in proper condition, and of sweeping and lighting the halls and stairs. The defendant is a manufacturer of children's headwear. The only means of exit and entrance into defendant's loft was this elevator, except that there was a narrow wooden stairway running through the building, which was very dark, in poor repair, and unlighted. The defendant called 17 witnesses, some interested, some apparently disinterested, and by them established that for about two years prior to the abandonment of the premises by the defendant, and particularly beginning with November, 1908, and running up to the time of the removal of the defendant from the premises, the elevator service became intolerable; that often the elevator would not commence to run until 9 or 9:30 in the morning; that during the day, and almost daily, the elevator would be shut down for unreasonably long periods; that customers wishing to call upon the defendant would either find a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sign hung on the elevator door that the elevator was not running, or would ring the elevator bell without response, wait for 15 or 20 minutes, and then either climb into defendant's loft by means of this narrow stairway, or depart without calling upon the defendant; that defendant's employés were repeatedly compelled, by reason of the fact that no response was made by the elevator operator to the ringing of the bell, to enter and leave defendant's loft by this stairway; that merchandise brought to defendant's place, by reason of the shutting down of the elevator, had either to be carried up or was not delivered at all; that at times the defendant, wishing to ship merchandise, was greatly inconvenienced; that either the shipment was delayed or the same had to be carried down in bundles by the workmen. The defendant complained ·to the plaintiffs, improvement was promised, and for a time there was slight improvement; but conditions became aggravated, and the defendant finally abandoned the premises.

I am satisfied as to the truth of defendant's charges. They are substantiated by the failure of memory evinced by the plaintiffs' elevator operator, upon the cross-examination of that witness. Whilst he denied the interruptions in the elevator service claimed by the defendant, the performance by this witness of the various duties, other than the operation of the elevator, is inconsistent with his claim of constant elevator service. Notwithstanding his claim that from 8 in the morning until 6 in the evening, with the exception of one-half hour for lunch, the elevator was in constant operation, upon cross-examination the witness testified that he did not remember whether the elevator had not been stopped for a period of an entire week in the month of December, 1908. The question which this court must determine is whether the facts proved by the defendant established a constructive eviction.

The defendant had hired and was using the premises demised as a manufactory for children's headwear, and whilst it is true that no covenant on the part of the landlords will be implied that the premises will be fit for the purposes intended by the tenant (see Scheffler Press v. Perlman, 130 App. Div. 576, 115 N. Y. Supp. 40), yet where by the acts of the landlords, their misfeasance, malfeasance, or nonfeasance, the premises become untenantable for the purposes for which they were let, a case is made out of a constructive eviction.

The law recognizes two classes of eviction: First, where by the acts of the landlords, or title paramount, the tenant has been actually physically· deprived of a material portion of the premises demised. That is termed an "actual eviction." Upon such eviction, the liability of the tenant to pay rent is suspended until the premises are restored to the tenant. The tenant may, in such case, continue in possession of the remainder of the premises, yet not be held to pay rent. Second, where the landlords have been guilty of such sins of omission or commission in relation to their duty towards the premises, as to deprive the tenant of the beneficial enjoyment thereof. The character of the enjoyment to which the tenant is entitled depends upon the character of the building and the purpose for which it is maintained and let. This class of eviction is known in law as a "constructive eviction."

There can be no constructive eviction without an actual abandonment by the tenant of the premises demised. See Olson. v. Schevlovitz, 91 App. Div. 405, 86 N. Y. Supp. 834; Boreel v. Lawton, 90 N. Y. 293, 43 Am. Rep. 170; Kinney v. Libbey, 54 Misc. Rep. 595, 104 N. Y. Supp. 863. As long as the tenant continues in possession of the premises, he is liable to pay all the rent which has accrued during his occupancy. Koehler v. Scheider, 15 Daly, 198, 4 N. Y. Supp. 611; Edgerton v. Page, 20 N. Y. 281; Boreel v. Lawton, supra; Goldstein v. Asen, 46 Misc. Rep. 251, 91 N. Y. Supp. 783.

Where the tenant has been deprived by the landlord of the beneficial enjoyment of the premises, the tenant has a reasonable time after the creation of the condition complained of within which to vacate the premises. What is a reasonable time depends upon the circumstances of each case. The tenant is oft relieved from the necessity of forthwith removing from the premises by the promises of the landlords of amelioration of conditions. So, in the case at bar, the fact, as claimed by the defendant, that complaints were made in November of 1908, that improvements were promised, that periodical improvements followed, that complaint was again made in February, 1909, that an improvement then followed, and that then conditions became more aggravated than they had ever been before, and that finally the defendant moved, on March 15, 1909, is a sufficient excuse in law for the failure of the defendant to remove from the premises at an earlier date. See Krausi v. Fife, 120 App. Div. 490, 105 N. Y. Supp. 384; Fox v. Murdock, 58 Misc. Rep. 207, 109 N. Y. Supp. 108.

It is not to be doubted that in the case at bar, by reason of the derelictions of the plaintiffs, the defendant was deprived of the beneficial enjoyment of his premises. Much less aggravated conditions have been held sufficient to justify the tenant in vacating the premises, and have operated to release the tenant from his obligation under the lease. See Krausi v. Fife, 120 App. Div. 490, 105 N. Y. Supp. 384; Lawrence v. Denham Co., 58 Misc. Rep. 543, 109 N. Y. Supp. 752. It certainly would be unreasonable, and a hardship on the defendant, to hold that, notwithstanding the inconvenience and annoyance suffered by the defendant, and the undoubted loss of business suffered by the defendant, by reason of the inaccessibility of his premises to his customers, the defendant should be compelled to remain in the premises and continue liable for rent.

I therefore award judgment for the defendant.