HUGH C. SKALLY *vs.* JAMES SHUTE & others.

Suffolk. September 8, 1881. — March 3, 1882. C. ALLEN, J., absent.

If wrongful acts of a lessor upon the demised premises are such as to permanently deprive the lessee of the beneficial enjoyment of them, and the lessee, in consequence thereof, abandons the premises, it is an eviction; and the intent to evict is conclusively presumed.

CONTRACT in two counts. The first count was for the violation by the defendants of their covenant for quiet enjoyment in a lease by them to the plaintiff of a lot of land with a wooden building thereon in Endicott Street in Boston for the term of fifteen years from November 1, 1870. The second count was for breach of an agreement in said lease, whereby the defendants agreed that "at the end of said term, and when the lessee, his representatives and assigns, shall cease to occupy the premises," they would pay the lessee for a building which the lessee agreed forthwith to erect on the land. Trial in the Superior Court, before *Gardner*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff introduced evidence tending to show that in 1870 he entered into possession under the lease, and erected on the premises a three-story wooden building at a cost of $1900; that up to May 1, 1879, he let the premises to tenants, realizing about $700 yearly rental; that he had kept the covenants of the lease, but that, in March 1879, the defendants came upon the premises, against the protest of the plaintiff, and dug under the building erected thereon, and left open and exposed a large opening under one end, preventing wholly any use of the cellar, and dug away the support of a portion of the building, so that the building settled upon one side, and was thereby rendered unsafe and unfit for occupancy; that he was notified by the inspectors of buildings for the city of Boston that the said building was unsafe; that the defendants opened a drain, running from another lot of theirs, through the premises, and also opened a cesspool on the premises, and left the same open and exposed, filling the house with a foul, unwholesome stench, so that the tenants were unable to occupy the premises, and left them; that

the defendants created and continued such a nuisance that the board of health notified them, the last of March or the first of April, that they must complete the work which they had begun in digging up the drain, but the defendants neglected to do so; that the tenants ceased to occupy said premises because they considered them unsafe, and because of the stench, and vacated the premises; and the plaintiff surrendered the keys of the building.

The defendants introduced evidence tending to show that when they leased the premises to the plaintiff there were two drains running from the adjoining premises, owned by them, through the premises leased, which drained the houses in the rear of the premises; that some time in March 1879, one of the drains became clogged up and out of order; that they went to the plaintiff and obtained his permission to open the drain and cesspool on the leased premises and repair the same; that they did not disturb the foundation of the building nor cause it to settle; that they did not cause any stench other than that neces‧sarily accompanying the cleaning out and repairing of the drain and cesspool, but that a large portion of the stench arose from the plaintiff's having a privy in the cellar of the premises, and not having a proper application of water to the same; that the defendants did not neglect nor delay to prosecute said repairs in as proper and speedy a manner as the circumstances would ad‧mit, and that they put the drain and cesspool in proper repair, and did not deprive the tenants of the use of the cellar to any greater extent or for any longer time than was necessary; that the causes of the settling of the building were, that it had not been properly constructed and built by the plaintiff, and that the plaintiff had allowed it to be occupied by a ship-chandler, who had put into the building goods heavier than the construc‧tion of the building would allow; and that they had no inten‑tion of destroying the enjoyment of the plaintiff in or to the premises, or any part thereof.

The following question was asked Mrs. Shute, one of the defendants, by their counsel: "Did you have any intention of destroying the plaintiff's enjoyment and occupation of said prem‑ises?" The judge, against the plaintiff's objection, allowed this question to be answered, and the witness replied, "No."

The plaintiff contended that the acts of the defendants, rendering the building unsafe and unfit for occupancy, and compelling him to vacate the premises, amounted to an eviction; and asked the judge to give the following instructions: "1. If the defendants opened the sewer, and for several weeks left the same open, filling the house with an unwholesome air that was dangerous to life, rendering the building unsafe for occupancy, and undermined the building so as to render it unsafe for occupancy, he had a right to treat it as an eviction, and abandon the premises, and recover in this action. 2. If by the acts of the defendant the building was so rendered as to endanger the life or health of the occupants, the lessee might treat it as an eviction, and abandon the premises."

The judge refused to give these instructions, but ruled "that these acts of the defendants were to be considered upon the question of the intent of the defendants; and instructed the jury that any acts of a permanent character done by the lessors, or by their procurement, with the intention and effect of depriving the lessee of the enjoyment of said premises, or of any part thereof, would constitute an eviction; that it was not necessary that there should be an actual physical expulsion in order to evict the lessee, but that, if the jury found that the acts of the defendants amounted to a clear indication of intention on their part that the lessee should no longer continue to hold the premises or to have the enjoyment thereof, this would amount to an eviction, and the plaintiff could recover; that to constitute an eviction, other than by physical ouster, there must be some act done by the lessors on the premises with the intent of depriving the lessee of the enjoyment and occupation of the whole or part of the same, to which the tenant yields the possession within a reasonable time." The jury returned a verdict for the defendants, and found specially that the defendants did not evict the plaintiff from the premises. The plaintiff alleged exceptions.

*F. S. Hesseltine*, for the plaintiff.

*J. H. Cotton*, for the defendants.

W. ALLEN, J. The question of the intention of the defendants was treated at the trial as a question of fact, to be tried by the jury upon inferences which they might draw from the acts themselves, and from other evidence in the case, including the

testimony of one of the defendants that she did not have any intention of destroying the plaintiff's enjoyment and occupation of the premises, and with instructions that, unless the jury found that the acts were done by the defendants with the intention that the lessee should no longer continue to hold the premises or to have the enjoyment thereof, there could be no eviction.

A definition of eviction has been sometimes given by which, to constitute an eviction of a tenant by a landlord, there must be an amotion of the tenant from the demised premises by, or in consequence of, some act of the landlord in derogation of the rights of the tenant, and with the intent to determine the tenancy, or to deprive the tenant of the enjoyment of the premises, or some part thereof. The amotion may be by physical expulsion by the landlord, or by abandonment by the tenant upon some act of the landlord which amounts to an eviction at the election of the tenant. The intent with which the act is done may be an actual intent accompanying and characterizing the act, or it may be inferred from the act itself. From a tortious entry by the landlord upon the premises, no presumption of an intent to evict the tenant arises, and such entry is not of itself an eviction at the election of the tenant; but, if accompanied by a claim of title, there is such a presumption, and the act is such an eviction. 2 Greenl. Ev. § 243. The act of a landlord in entering upon the premises and putting out a man who had been put in by the tenant to show the rooms, and whose proceedings annoyed the landlord, is not an eviction if done with the intent to rid himself of the annoyance, but becomes such if shown to have been done with intent to evict the tenant. *Henderson* v. *Mears*, 1 F. & F. 636. But the question of actual intent arises only when the acts are such as do not of themselves afford a presumption of intent. Generally the question whether acts of the landlord in consequence of which the tenant abandons the premises amount to an eviction, is a question of law, and includes the question whether they constitute proof of the intent. A person is presumed to intend the natural and probable consequences of his acts; and when the acts of a landlord upon the demised premises are such as naturally and probably exclude the tenant from the possession and enjoyment of the premises, and assert a title in the landlord himself, the law presumes an intent

to do so; and, if the natural consequence follows, the acts are said to amount to an eviction. From the physical exclusion of the tenant from the premises, the law presumes an intent to evict; and wrongful acts of the landlord upon the premises, which render them permanently unsafe and unfit for occupancy, so that the tenant loses the enjoyment of them, carry with them the presumption of the intent to deprive the tenant of that enjoyment.

In *Lloyd* v. *Tomkies*, 1 T. R. 671, it was held that, in an action for breach of the covenant for quiet enjoyment, the declaration need not allege an entry claiming title, if the disturbance complained of be such as shows an assertion of right. Ashhurst, J. says, " The act itself asserts a title."

*Royce* v. *Guggenheim*, 106 Mass. 201, was an action for rent, and the defence was an eviction from two rooms, part of the premises, by erecting a building on the premises so as to cut off air and light from the rooms. The jury were instructed that, " if, after the erection of the building in the back yard, against the house, closing the windows of those rooms, those rooms were made entirely unfit for" the use they had been before put to, " and by reason of that unfitness were abandoned, and this erection was not by the license or consent of the defendant, this was an eviction so as to effect a suspension of the rent." These instructions were held to be correct, and there was no evidence and no question made as to the intent.

In *Sherman* v. *Williams*, 113 Mass. 481, which was an action on a covenant for quiet enjoyment, the breach alleged being the building of a wall under the eaves of the building, cutting off light and air, &c., the court say, " Its effect was to deprive the plaintiffs of so much of the demised premises as the party wall covered, by the erection of a permanent structure thereon changing the character and beneficial enjoyment thereof, and the defendants are responsible therefor, without further proof of the intent."

In *Upton* v. *Townend*, 17 C. B. 30, and in *Royce* v. *Guggenheim*, *ubi supra*, definitions of eviction by a landlord are given which include the intention of the landlord to deprive the tenant of the enjoyment of the premises; but it is plain that in neither case is meant an intention which may not be conclusively presumed from the acts themselves. The conclusion of the court in both

cases may be expressed in the language of Williams, J. in the former case : " I feel no doubt whatever that the facts do amount to what the law calls an eviction."

The evidence offered by the plaintiff tended to prove that the defendants wrongfully entered upon the demised premises, and did such acts by digging up the soil under the building as rendered it permanently unsafe and unfit for occupancy, so that the tenants were unable to occupy it, and the plaintiffs lost the enjoyment of the premises, and abandoned them. Whether these facts were proved was certainly a question for the jury; but if proved they amounted to an eviction, and the intention with which they were done was not a question of fact for the jury.

The jury should have been instructed to the effect that, if the wrongful acts of the defendants upon the demised premises were such as to permanently deprive the plaintiff of the beneficial enjoyment of them, and the plaintiff in consequence thereof abandoned the premises, it would be an eviction.

*Exceptions sustained.*