Petting-ell, A. P. J.
Two actions to recover rent from a tenant occupying premises by virtue of a written lease. The two actions, with a third action not a part of this appeal, originally were heard in the District Court. The trial judge disposed of the two actions by the landlord by ruling that the written lease between the parties barred pleas of eviction by the tenant; as to the third case he rules that the lease barred, also, an action of tort by the tenant against the landlord. All three cases were brought to the Appellate Division. The sole issue here was the interpretation of the lease. Prejudicial error was found in the two actions for rent, which were sent back for a new trial, but the report in the third action was dismissed. The tenant did not perfect his appeal in that case to the Supreme *373 Judicial Court and the landlord recovered judgment. That appeal will be referred to subsequently.
The cases were then tried again in the District Court and the trial judge, guided by the law announced by the Appellate Division, found in both actions, as fact, that there was an eviction, finding for the defendant. The plaintiff appealed to this Division. There was a decision that there was prejudicial error and judgment was ordered for the plaintiff. On the defendant’s motion the case is now argued again.
The present issues turn upon the denial of twenty-six rulings requested at that trial by the plaintiff. Summarized, the plaintiff’s grounds of grievances are:
1. The failure of the court to interpret the clause in the lease, reading: “No alleged failure to make any repairs or to keep the premises in any condition, shall constitute a defense to any action brought by the lessor of the contract contained in this lease.” 2. A wrongful interpretation of what constitutes an eviction. 3. The failure of the trial judge to rule that the judgment recovered by the landlord against the tenant in the latter’s action for eviction is a bar to the defendant’s plea of eviction in the present action. 4. The cross-examination of the defendant by his own attorney, on matters not opened up by the plaintiff, when the defendant was called as a witness by the plaintiff.' 5. The admission of the testimony of one Moran, a former insurance investigator, as to the condition of the apartment occupied by the defendant, and the boiler room beneath it, after the defendant had vacated the premises. 6. The admission of the testimony of the plaintiff and his witnesses based upon, or for the purpose of establishing, the alleged eviction, on the ground that the terms of the lease barred the defense of eviction to escape payment of rent, and because of the judgment for the present plaintiff in the action for eviction begun by the tenant against the landlord.
*374 It is apparent that items 1, 3 and 6 involve the interpretation of the lease, and involve as well, the earlier decision which interpreted it. Item 2 turns upon the nature and characteristics of an eviction and items 4 and 5 are purely matters of evidence, not a part of any other issue in the case.
We shall first consider the questions of evidence. The plaintiff called the defendant as a witness, and examined him as to the execution of the lease, his occupation of the premises, and whether or not he had paid the rent sued for. At the close of the examination, the defendant’s attorney began to cross-examine the defendant by using leading questions relating to the defendant’s claim of eviction in an attempt to establish it. The plaintiff objected to this line of questioning, the Court ruled that, the witness having been called by the plaintiff, the defense had a right to cross-examine him. The plaintiff requested that this ruling be reported.
It has always been the law in Massachusetts that the scope and limits of cross-examination rest in the sound judicial discretion of the trial judge. Winship v. Neale, 10 Gray 382, at 383. Jennings v. Rooney, 183 Mass. 577, at 579. Squier v. Barnes, 193 Mass. 21, at 25. Smith v. Boston Elevated R’y, 208 Mass. 186, at 187. Commonwealth v. Russ, 232 Mass. 58, at 82. Commonwealth v. Bosworth, 257 Mass. 212, at 214. Walsh v. Feinstein, 251 Mass. 109, at 112. Commonwealth v. Mercier, 257 Mass. 353, at 367. Goldman v. Ashkins, 266 Mass. 374, at 379, 380. Guinan v. Famous Players-Lasky Corp., 267 Mass. 501, at 523.
Also within the discretion of the trial judge, is the order in which the parties shall put in their respective parts of the trial. Sanford v. Orient Ins. Co., 174 Mass. 416, at 422. *375 Anthony v. Cowell Co., 214 Mass. 439, at 442. Lowell Trust Co. v. Wolff, 223 Mass. 168, at 172. Wilson v. Davison, 242 Mass. 237, at 242. Kelly v. Halox, 256 Mass. 5, at 8. Grance v. Monroe, 280 Mass. 184, at 187. Nash v. Heald, Mass. Adv. Sh. (1940) 1339, at 1342.
The right to call the adverse party as a witness and to cross-examine him is a statutory one and has been a part of our law since 1870. Although such a witness may be called and cross-examined, the party calling him does not hold him out as worthy of credit, Emerson v. Mark, 185 Mass. 427, at 429, 430, and is not bound by his testimony. Anderson v. Middlebrook, 202 Mass. 506, at 508, 509. Having called him, however, and having him on the stand, a practical question arises, whether it is better for the proper and expeditious conduct of the trial to allow him to remain there and be examined by his own attorney, or to compel him to step down, to return to the stand at a later stage of the case when his own case is going in. There is only one case in Massachusetts dealing definitely with this situation. In Phillips v. Vorenberg, 259 Mass. 46, it appears that the plaintiff called the defendant as a witness and examined him. The trial judge ruled that the defendant’s counsel could not cross-examine the defendant except as to the evidence given by him in his examination by the plaintiff. The Supreme Judicial Court said at page 73 “The order of the introduction of evidence, and the limits of cross-examination were within the discretion of the judge, and no error is shown.” We are of opinion that it was within the discretion of the trial judge in this case to permit the defendant’s attorney to cross-examine the witness at that time as to all matters within the scope of the defendant’s answer, without waiting for the witness to *376 be recalled later. Ordinarily a witness may be cross-examined as to matters other than those opened up in chief. Freeman v. Freeman, 238 Mass. 150, at 162. It is not prejudicial error for the trial judge to permit the use of leading-questions, this being wholly a matter of discretion. York v. Pease, 2 Gray, 282, at 284. Partridge v. Middlesex & Boston St. Ry., 221 Mass. 273, at 275.
The second question of evidence arises from the admission of the testimony of one Moran, formerly an investigator employed by an insurance company, who testified that while so employed he entered the demised premises after the defendant had vacated them, and described what he saw there in the nature of marks of soot, smoke and oil on the baseboards and wall paper. The report does not state when the witness visited the apartment except to say that it was ‘ ‘ after the defendant vacated the same and while the apartment was then vacant. ’ ’ There was testimony that the defendant vacated the apartment February 16, 1937. Moran testified that on February 16, 1937 he was an investigator employed by the Insurance Company “who insured the plaintiff’s premises against general liability.” It does not definitely appear from the report that he visited the apartment on that date.
Whether or not the conditions of the apartment when Moran saw it was the same as when the defendant occupied it was a preliminary question to be decided by the trial judge. There was no evidence that there had been any change in the premises. There was evidence that the apartment was vacant. There was in evidence, without objection, a letter from the plaintiff’s attorney to the corporation which had installed the oil burner, whose alleged imperfect operation was the cause of damage allegedly suffered by *377 the defendant, written February 26, 1937, nine days after the defendant vacated the premises, in which the attorney, writing in behalf of the plaintiff, stated that the burner was defective, that it caused, “Puff backs of black oily smoke, sparks and fumes” and continuing:
“The two tenants that were in the suites directly over the burner broke their leases and moved out, as you know, on account of claims of noxious fumes emanating from oil combusion, puff backs and on account of the noise and vibration. Tour burner with the above defects cannot be regarded as and is not complete or satisfactory. ’ ’
There was evidence, also, from witnesses other than Moran, that the apartment occupied by the defendant was one of those directly over the oil burner, and that there were openings and cracks in the floor between the baseboard and the floors, and around the pipes, and that smoke and soot entered the aparement ‘ ‘ off and on up until February 16th. ’ ’ There was, also, a statement in a letter written by the plaintiff’s attorney, dated December 30, 1936, to the effect that the defendant’s personal belongings had been damaged “by oil smudges” due to the “unfinished state” of the burner.
We are of opinion that whether or not Moran’s testimony was admissible was a matter within the discretion of the trial judge, and that this discretion does not appear to have been exercised wrongly. Farrar v. Ring, 210 Mass. 75, at 77. Goldman v. Reagan, 247 Mass. 492, at 494.
It cannot be said that, upon all the evidence and considering the absence of testimony that there had been a change in the condition of the premises, an inference was not warranted that the premises were in the same condition when Moran visited them as when the defendant left them. *378 Droney v. Doherty, 186 Mass. 205, at 207. White Sewing Machine Co. v. Phenix & Co., 188 Mass. 407, at 408. Young v. Snell, 200 Mass. 242, at 245, 246. Tilton v. Haverhill, 203 Mass. 580, at 581, 582. Commonwealth v. Arone, 265 Mass. 128, at 129, 130.
Furthermore, aside from the question whether the testimony of Moran was competent and admissible, its admission in any event does not constitute prejudicial error. Practically everything that he testified to, “evidence of smoke and soot on the baseboard”, openings in the floor in Scott’s apartment where the floor joined the baseboard”, and clouds of smoke in the boiler room, was testified to by other witnesses. The only thing testified to by him that was not testified to by others was that he saw “flares of oil and soot stains on the wall paper”. In view of the other admitted testimony of the frequent presence in the apartment of oily smoke, and the damage done by it to the personal property of the defendant, and the statement in a letter of the plaintiff’s attorney, admitted in evidence that the belongings of the defendant “have been damaged by oil smudges”, testimony that there were oil and soot stains on the wall paper was not harmful to the plaintiff. Morrison v. Lawrence, 186 Mass. 456, at 458. Chandler v. Prince, 217 Mass. 451, at 459. Commonwealth v. Simpson, 300 Mass. 45, at 50, 51.
The remaining claim of error based on the admission of evidence centers about the plaintiff’s claim that the lease between the parties bars the defendant from setting up eviction as a defense. The plaintiff “duly objected to the admission by the Court of any and all testimony based upon or claimed to constitute the alleged eviction of the defendant on the ground that the terms of the lease * * * precluded the defendant from using eviction as a means of escaping liability for rent under the lease.”
*379 This was the issue between the parties the first time that the cases were before this Division. In the actions for rent brought by the plaintiff, the defendant had pleaded eviction. The defendant in another action, brought by him as plaintiff against the present plaintiff as defendant sought to recover damages for a wrongful eviction. In dealing with the cases at that time this Division decided, as matter of law, that the effect of the lease, through the words of release contained therein, was to extinguish any and all rights which the defendant might have acquired as the result of any tortious act of the plaintiff, and that any rights of action by him were therefore barred. We ruled further, however, that the lease, either in terms or by implication, did not deal with the subject of eviction, and that the effect of eviction upon a tenant, when evicted, while it might create a right of action in tort, was primarily not the creation of a new right, but the ending of a present liability to pay rent, and that while the words of release contained in the lease necessarily barred an action in tort, they had no relation to the ending of the liability to pay rent, which was actually a self-imposed loss of a right of the landlord, brought about by his own conduct.
These rulings of the Appellate Division have become the law of the case as far as the Appellate Division is concerned and these particular contentions of the plaintiff, having been passed upon at that time, are not now open to him here. Boyd v. Taylor, 207 Mass. 335, at 336. Beach & Clarridge Co. v. American &c. Mfg. Co., 208 Mass. 121, at 132. Hetherington & Sons v. William Firth Co., 212 Mass. 257, at 260. Bacon v. George, 216 Mass. 529. United Drug Co. v. Cordley & Hayes, 239 Mass. 334, at 337. Weiner v. Pictorial Paper Package Corp., 303 Mass. 123, at 128. See Peterson *380 v. Hopson, Mass. Adv. Sh. (1940) 1389, at 1390, 1391. The plaintiff has had an opportunity to present its contentions to the court and to have them considered. The decision has been adverse to it, and now it has an opportunity to present the same contentions to the Supreme Judicial Court. In the meantime, it must accept the fact that these contentions are no longer material or vital in this Division until the Supreme Judicial Court has passed upon them.
The plaintiff, however, argues that this Division did not at that time fully pass upon its contentions as to the lease because it did not then construe that part of the lease which relieved the plaintiff from all liability to make repairs, it being the plaintiff’s contention that the matter complained of by the defendant comes within the scope of repairs, and that, as the plaintiff is not bound to make repairs, there is nothing that the defendant can complain of.
The plaintiff leased to the defendant an apartment located over the boiler room of the building. According to the evidence there were sundry openings and cracks leading from the boiler room into the plaintiff’s apartment above. If the defendant had objected to this incomplete condition of the building, the plaintiff could well have answered that by the terms of the lease it was not obliged to make any repairs :or changes. The defendant made no request for repairs or changes.
The plaintiff, on its own notion, chose to take out the soft-coal heating equipment and to replace it with an oil-burning installation. The defendant did not request that this be done; the plaintiff was under no obligation to make such a change, as long as the soft coal burning equipment furnished adequate heat.
■ According to the overwhelming preponderance of the evidence, the oil-burning installation worked badly. It caused *381 heavy clouds of smoke to fill the boiler room and to escape thence by the cracks and openings leading to the apartment above so that the defendant’s apartment was filled with smoke and with fumes, his property damaged and his health impaired. Again, he did not ask for repairs, but for a cessation of the invading smoke and fumes.
It was not the lack of repair of the building that was in issue but the plaintiff’s positive act of creating smoke and fumes. It would have been the same if the ceiling of the boiler room and the floor above it, had been tight and the smoke and fumes had entered the apartment by way of the stairs and hallways; what the defendant was complaining of was not a matter of defective conditions, it was the continuance by the plaintiff of an unnecessary, disagreeable, unhealthy invasion of the apartment leased to the defendant which so materially interf erred with the defendant’s enjoyment of the leased premises as to constitute an eviction. At the time of the former hearing, we failed to see anything in the case which brought into issue the provision releasing the defendant from liability to make repairs; we are still of the same opinion; we do not consider that that provision of the lease is in any way involved.
What has been said about the plaintiff’s non-liability to make repairs applies also to the non-liability “to keep the premises in any condition.” “Condition” as here used clearly applies to the physical state of the premises in terms of completeness or repair. It does not apply to “the present or future state of the air within it.” Foster v. Peyser, 9 Cush. 242, at 246. This provision of the lease does not diminish the right of the tenant to claim an eviction, if the landlord commits acts which makes the occupation of the leased premises impossible.
*382 We are of opinion that a further interpretation of the lease in the particulars specified by the plaintiff does not change the result reached in our earlier opinion on the merits.
What has been said concerning the relation of our earlier decision to the recent trial, and its effect upon that trial as constituting the law of the case, logically brings us to a consideration of the plaintiff’s contention that the adverse decision in the action of the tenant against the landlord (Scott v. Westland Housing Corporation), constitutes res judicata in these actions by the landlord against the tenant for rent.
For a judgment to be res judicata in a subsequent trial, the two actions must be for the same cause of action. Gilbert v. Thompson, 9 Cush. 348, at 349. Harding v. Hale, 2 Gray 399, at 400. Crosby v. Baker, 6 Allen 295, at 296, 297. Harlow v. Bartlett, 170 Mass. 584, at 592. Karas v. Karas, 294 Mass. 230, at 231. Watson v. Berman, 302 Mass. 305, at 306, 307. Whittemore v. Selectmen of Falmouth, 304 Mass. 72, at 74. This is so even if the two causes of action grew out of the same transaction. Newhall v. Enterprise Mining Co., 205 Mass. 585, at 588. If the second suit is upon a different cause of action, the bar of the earlier suit is limited only to that which was actually litigated and determined. Eastman Marble Co. v. Vermont Marble Co., 236 Mass. 138, at 148. “A verdict and judgment are conclusive by way of estoppel only as to those facts which were necessarily involved in them without the existence and proof of which such a verdict and judgment could not have been rendered.” Burlen v. Shannon, 99 Mass. 200, at 202. Olsen v. Olsen, 294 Mass. 507, at 509. Cambria v. Jeffery, Mass. Adv. Sh. (1940) 1465, at 1466. Hopkins v. Holcombe, Mass. Adv. Sh. (1941) 55, at 56.
*383 In the third action in which the plaintiff, landlord, recovered a final judgment against the defendant, the latter, as tenant, sued in tort to recover damages for the eviction which he now pleads as a defense in the action for rent. There is reported no evidence as to the nature and manner of that judgment except the docket entries of the district court offered by the plaintiff and excluded. It is apparent, however, that an action in tort for damages is not the same cause of action as one in contract for rent, and, as the judgment relied upon is based upon the order of this Division, the opinion in that case may be examined to find the ground on which the case was decided. Abbott v. Bean, 295 Mass. 268, at 274.
We find that the ease was in the Appellate Division on a report raising the issue of the correctness of the ruling of the trial judge that the provisions of the lease constituted a bar to the tenant’s action. The Appellate Division decided that the words of release in the lease barred the tenant from bringing an action of tort for damages caused by the eviction and ordered the report dismissed. All that was necessary for that decision and that judgment was the ruling that the provisions of the lease barred an action in tort. Nothing else was decided, nothing else could be res judicata. Cambridge v. Jeffrey, Mass. Adv. Sh. (1940) 1465, at 1466. Hopkins v. Holcombe, Mass. Adv. Sh. (1941) 55, at 58.
In the present cases, the landlord is suing for rent, in contract. The tenant produced testimony which the trial judge found constituted a constructive eviction. It has already been pointed out that the tenant’s contention is not based upon any right acquired by the tenant, but is founded upon a loss of right caused to the landlord by his own improvident action. It has been pointed out, also, that there is nothing *384 in the lease either expressly, or by implication, which bars the tenant from pleading eviction as a defense.
In our opinion the earlier judgment against the tenant in no way included or involved any issue involved in this action; that it was based upon a ruling of law which is not raised in these cases, and does not constitute res judicata. There was no prejudicial error in the exclusion of the evidence offered by the plaintiff or in the refusals of the trial judge to rule that the earlier judgment constituted res judicata.
Furthermore, the bringing of the action of tort and prosecuting it to a final adverse judgment was not such an election as to prevent the tenant from pleading in defense of the action for rent the same matter relied upon as the basis for the action of tort. The action in tort was in itself a proper recognized form of procedure. Mitsakos v. Morrill, 237 Mass. 29, at 31. Sufficiently supported by evidence the action conceivably might have succeeded. It appears from the opinion of this Division, following the first trial, that the action failed because the provisions of the lease constituted a bar to such an action. A case, similar in principle and result is Ferris v. Boston & Maine Railroad, 291 Mass. 529, in which the plaintiff, suing for the breach of a contract whereby he had agreed to release the defendant from all claims as a result of an accident, in consideration of $200. and the defendant’s agreement “to take care” of him, was met with the defense of election, he having earlier brought actions of tort against the defendant for the injuries suffered, and having later discontinued them. The court said, at page 531:
“The fact that before bringing this action the plaintiff brought actions of tort for his injuries and later *385 discontinued them does not show an election of remedies which bars him from prosecuting this action. If he establishes in this action the contract which he now contends was made, then the release which he signed ended his original cause of action in tort, and he had no right of election. He is not barred merely because he attempted to pursue a remedy which was not open to him.”
“The attempted enforcement by the plaintiff of a remedy which did not exist did not preclude it from the enforcement of a legal remedy.” Western Massachusetts Finance Co. v. Carrier, 295 Mass. 441, at 445.
The next contention of the plaintiff is that the trial judge was in error in regarding the facts of the case as constituting an eviction. In this particular the plaintiff insists that there was prejudicial error in the trial judge’s decision in three particulars :
(a) that the evidence did not in law amount to proof of eviction: (b) that the defendant did not remove from the premises within a reasonable time: (c) that the acts complained of as constituting eviction, having been performed by an independent contractor, could not be an eviction.
The evidence was sufficient to constitute a constructive eviction.. There was testimony that beginning in December 1936,. and lasting until February 26, 1937, oil fumes, smoke and gas filled the apartment of the defendant, the tenant, damaging his property and injuring his health. In . addition to. the defendant’s testimony, there were in evidence three' letters written by the plaintiff’s attorney to the contractor employed to install the oil burner, dated' December 23, 1936, when the trouble had been going on “for about *386 ten days,” December 30,1936, and February 26,1937. These letters describe in detail the creation of the “smoke, soot and gas fumes,” their invasion of the defendant’s premises, and the injury to him and other tenants. There was testimony from the defendant’s doctor as to the injurious effect of the gas fumes upon the health of the defendant and his wife.
The letters referred to fully corroborate the defendant’s testimony as to the invasion of his apartment by black, oily smoke and fumes. They definitely establish the existence of a continuing nuisance, rendering impossible a normal tenency, and resulting in one that was unpleasant, dangerous, and destructive of property. “Generally the question whether acts of a landlord in consequence of which the tenant abandons the premises amount to an eviction is a question of law.” Skally v. Shute, 132 Mass. 367, at 370.
The act of the landlord which constitutes an eviction, because it deprives the tenant of the enjoyment of the premises, may be something which takes away from the tenant some right or beneficial use to which, by the terms of the letting, he is entitled, as where a landlord leased a room and power and then threw off a belt transmitting the power, as in Brown v. Holyoke Water Power Co., 152 Mass. 463, at 464. It may be a failure to provide sufficient power to operate the passenger elevator which was necessary for convenient access to the tenant’s office. McCall v. New York Life Ins. Co., 201 Mass. 223, at 225, 226. It may be the unjustified shutting off of city water in winter from a building where horses were stabled. Boston Veterinary Hospital v. Kiley, 219 Mass. 533, at 537. It may be a failure to provide the heat and hot water called for by the lease, or by an oral agreement subsequent to the lease. Conroy v. Toomay, 234 Mass. 384, at 386, 387. Rome v. Johnson, *387 274 Mass. 444, at 449-451. Shindler v. Milden, 282 Mass. 32, at 34, 35. It may be, also, the refusal of the landlord to do an act necessary to the enjoyment of the premises by the tenant.
“Where the landlord has refused to give his consent to an act by the tenant or a third person without which the tenant cannot occupy the premises there is a constructive eviction.” Smith v. Tennyson, 219 Mass. 508, at 510.
In that case permission was refused the tenants, after the loss of their keys, to have new keys made, the tenants being unable to enter the premises without keys.
There may be a constructive eviction, also, where the landlord so maintains the building of which the demised premises are a part, that the demised premises “became unsuitable for the purposes for which they were leased.” Nesson v. Adams, 212 Mass. 429, at 431. In that case the landlord covenanted “to light and to keep neat and clean the common stairs of the building, to heat the leased premises and to supply them with hot and cold water and elevator service.” There was evidence that the elevator service was irregular and was stopped for days at a time, that the tenants were obliged to use the elevator in an adjoining building; that the stairs and corridors were not lighted; that garbage was scattered on the floor of the corridor and permitted to remain there for days; that the supply of hot water was irregular and not furnished when most needed.
We are of opinion that the interference with the tenant’s use of the premises in that case was of a much less degree in amount and seriousness than existed in the case at bar, where there was evidence of a continued invasion of the tenant’s premises by unpleasant and noxious fumes and *388 oily smoke, which not only disturbed the peace of mind of the tenant and his wife, but definitely endangered their health. We believe, therefore, that the facts designated by the trial judge as constituting an eviction in fact, amounted to an eviction as matter of law.
The plaintiff contends that the facts found by the trial judge could not constitute an eviction because a finding was not warranted that an intention existed, on the part of the landlord, “of depriving the tenant of the enjoyment of the premises demised.” Royce v. Guggenheim, 106 Mass. 201, at 202. The landlord’s intention, the plaintiff contends, was one to improve the heating system of the building and not to deprive the tenant of anything.
“A person is presumed to intend the natural and probable consequences of his acts; and when the acts of a landlord upon the demised premises are such as naturally and probably exclude the tenant from the possession and enjoyment of the premises, and assert a title in the landlord himself, the law presumes an intent to do so; and, if the natural consequence follows, the acts are said to amount to an eviction. From the physical exclusion of the tenant from the premises, the law presumes an intent to evict; and wrongful acts of the landlord upon the premises, which render them permanently unsafe and unfit for occupancy, so that the tenant loses the enjoyment of them, carry with them the presumption of the intent to deprive the tenant of that enjoyment.” Skally v. Shute, 132 Mass. 367, at 370, 371. See, also, Shindler v. Milden, 282 Mass. 32, at 33.
“The intent is important only in the case of acts not necessarily amounting to' an entry and deforcement of the tenant.” Smith v. McEnany, 170 Mass. 26, at 28.
“To state the matter briefly, the jury upon the undisputed facts and the evidence as to the facts in dis *389 pute properly might have found that by reason of the defective elevator service the premises were entirely unsuitable for the purpose for which they were hired and for which alone they could be used under the terms of the lease; that this defective service was due to the abstraction of power needed to run the elevator properly; that this abstraction was wilfully and actively made by the lessor or by its authority, and not withstanding the complaints made to the lessor, was persistently continued with knowledge of the consequences. The lessor must be held to have intended these consequences.” McCall v. New York Life Ins. Co., 201 Mass. 223, at 226.
“ This and other similar evidence was strongly controverted by the plaintiff, but its weight was for the jury. If believed it would warrant a finding that the defendant or those acting by his authority kept the approaches to the leased premises in such condition that the suites became unsuitable for the purposes for which they were leased and further that the plaintiff persisted in so maintaining the portions of the building under his control after complaints had been made to him and his agents and notification given that it would result in the departure of the tenants. * * * We cannot say as matter of law that there was no evidence for the jury on the issue of an eviction * * *.” Nesson v. Adams, 212 Mass. 429, at 431.
In the case at bar, there were not only repeated complaints and failure to remedy the unsatisfactory conditions, there was an entire absence of a disposition to deal firmly with the situation, despite the complaints of the tenants and the knowledge that tenants were in danger of physical injury and were threatening to move and did move. All this appears in the letters written by the plaintiff’s attorney to the contractor, which are a part of the record. These letters, however, tell much more; they are a complete index of the action taken by the plaintiff to remedy the situation. *390 They show that a letter was written by the plaintiff’s attorney on December 23, 1936, another letter, December 30, 1936, and a final letter, February 26,1937. These three letters show that, despite the unsatisfactory conditions pictured in them, they represent the entire action taken by the plaintiff to remedy the deplorable conditions described during the period from December 23, 1936 to February 26, 1937, other than that the contractor’s attention “on numerous occasions” was “called to several matters” pertaining to the burner.
From this state of inaction the trial judge was warranted in finding that the plaintiff was indifferent to the hardships and inconveniences imposed upon the defendant by the failure of the contractor to improve the imperfect operation of the oil burner. In this case, also, as in McCall v. New York Life Ins. Co., 201 Mass. 223, at 226, and Nesson v. Adams, 212 Mass. 429, at 431, the plaintiff’s failure to respond adequately to the just complaints of the tenants was evidence bearing upon its intention and manifested a complete disregard of their rights and comfort as well as a disinclination to act even if they were forced to vacate, because the premises had become unsafe and unfit for occupancy. Skally v. Shute, 132 Mass. 367, at 372. Tracy v. Long, 295 Mass. 201, at 204, 205.
The plaintiff’s second contention as to eviction is that the defendant did not remove from the demised premises within a reasonable time. The letter of December 23, 1936, states that the trouble began “about ten days ago.” There was testimony that the defendant vacated the premises February 16,1937. Between those dates, there were repeated complaints to the plaintiff by the defendant and talk by the defendant of attempted adjustment and improve *391 ment of the conditions. There was evidence that the plaintiff was making some effort to get from the contractor that action which would result in an abatement of the nuisance. The plaintiff’s contention throughout the trial of the cases was that these claims of fact made by the defendant were unfounded and not as represented/ All of these factors make the question of reasonable time one of fact.
“Reasonable time is not an inflexible term. It depends commonly upon the 'circumstances of each case. When the facts are undisputed, it is a question of law. But when the salient facts are in controversy and depend in part upon inferences to be drawn by sound judgment, then it is a fact to be determined by the practical sense of a jury.” American Steam Gauge &c. Co. v. Mechanic &c. Co., 214 Mass. 299, at 301.
“What is a reasonable time depends upon the circumstances of each case including the size of the leased premises, the purposes for which they are occupied by the tenant, the personal property and fixtures owned by the tenant, the place where they are located, and the time reasonably required to remove them, with known weather conditions in New England and the difficulty of securing another location suitable for the conduct of the defendant’s business. * * * We are of opinion that it was a question of fact for the jury to determine upon proper instructions. ’ ’ Rome v. Johnson, 274 Mass. 444, at 451.
The case just quoted concerned an industrial tenancy but we are of opinion that the same reasoning applies to an eviction from an apartment. In addition, a further consideration is the fact that the tenant was entitled to rely to some extent upon the expectation that his complaints and protests would bring about some improvement.
*392 See, also, Kelly v. Thomas G. Plant Co., 274 Mass. 102, at 105. Palumbo v. Olympic Theatres, Inc., 276 Mass. 84, at 88. R. A. Jones & Co., Inc. v. Green Bros., 289 Mass. 50, at 52.
The remaining issue is the effect upon the situation of the employment of an independent contractor by the defendant to install the oil burner. According to the report, the defendant offered evidence that it had made a contract with the Arthur H. Ballard, Inc. for the installation of a complete oil burner, to be completed by December 3, 1936, at a specified price. It was the oil burner installed under this contract which created the soot, oily smoke, and gas fumes of which the defendant complained.
In such a case the law usually is that “When a person employed is engaged under an entire contract for a gross sum in an independent operation, and is not subject to the direction and control of his employer, the relation is not regarded as that of master and servant, but as that of contractor and contractee; and in such case the general rule is that the negligence of the contracting party cannot be charged upon him for whom this work is to be done; and this rule is applicable even where the owner of the land is the person who hires the contractor, and for whose benefit the work is done.” Boomer v. Wilbur, 176 Mass. 482, at 483, 484. Davis v. John L. Whiting & Son Co.. 201 Mass. 91, at 93-95. Regan v. Superb Theatre, Inc., 220 Mass. 256, at 260, 261. Pickett v. Waldorf System, Inc., 241 Mass. 569, at 570, 571. Mintz v. White, 269 Mass. 218, at 221. Fox v. Pallotta, 274 Mass. 110, at 115. Wilson v. Norumbega Park Co., 275 Mass. 422, at 424. Kunan v. DeMatteo, Mass. Adv. Sh. (1941) 487, at 489.
There is a well recognized exception to this rule. A defendant who employs an independent contractor to do work *393 which in itself is inherently dangerous, or will necessarily bring wrongful consequences to pass unless guaranteed against that result, or requires proper precautions to protect the public by sufficient guards or barriers, is not relieved from liability “if negligence causing injury occurs during the work.” Woodman v. Metropolitan Railroad, 149 Mass. 335, at 339, 340. Pye v. Faxon, 156 Mass. 471, at 474. Thomson v. Lowell &c. Street Railway, 170 Mass. 577, at 582. Wetherbee v. Partridge, 175 Mass. 185, at 186. Nugent v. Boston Consolidated Gas Co., 238 Mass. 221, at 232. McGinley v. The Edison &c. Co. of Boston, 248 Mass. 583, at 586. McConnon v. Charles H. Hodgate Co., 282 Mass. 584, at 588. Herrick v. Springfield, 288 Mass. 212, at 216. Kunan v. DeMatteo, Mass. Adv. Sh. (1941) 487, at 489.
There is still another exception to the rule. “When the owner of premises which are under his control employs an independent contractor to do work upon them which from its nature is likely to render the premises dangerous to persons who may come upon them by the invitation of the owner, the owner is not relieved by reason of the contract from the obligations of seeing that due care is used to protect such persons. The owner cannot continue to hold out the invitation without being bound to exercise due care in keeping the premises reasonably safe for use according to the invitation.” Curtis v. Kiley, 153 Mass. 123, at 126.
“The owner owes a duty to those coming upon his premises by his invitation to use care to see that the premises are kept in a reasonably safe condition for the purposes for which they are arranged.” Wilson v. Norumbega Park Co., 275 Mass. 422, at 424.
*394 The quotation from Curtis v. Kiley, supra, is repeated in Levesque v. Hildreth & Rogers Co., 276 Mass. 429, at 434, where it is pointed out that the plaintiff was invited to the defendant’s premises and that the defendant owed him the duty of using due care to see that the premises were reasonably safe for the use contemplated, and that this was a duty which it could not delegate by the employment of an independent contractor. McConnon v. Charles H. Hodgate Co., 282 Mass. 584, at 588.
“An owner of real estate apart from a vicarious liability for negligence of an independent contractor in the necessary performance of inherently dangerous work on the owner’s premises, may be held liable for his own personal negligence in connection with the operation ‘if, through any lack of reasonable care on his own part in guarding against the known dangers of the undertaking, injury results from the negligence of those to whom he entrusts its performance. ’ ” Ferguson v. Ashkenazy, 307 Mass. 197, at 202.
The last case cited is an action by a tenant against a landlord for personal injuries resulting from the fumigation of an apartment house by an independent contractor. Negligence of the owner, apart from the negligence of the independent contractor, was found.
In the case at bar the defendant contracted for the installation of work that should have taken place at most a very few days. The contract called for the completion of the work, December 3, 1936. Trouble for the plaintiff, because of results, arising from the imperfect work of the contractor, began about the middle of December. February 26, 1937, the defendant was still complaining to the contractor about the nuisance still existing which was caused *395 to the tenants by the landlord’s operation of an unsatisfactory installation.
The contract called for the installation of a completed oil burner. There is no evidence that it called for any operation of the burner. From sometime in December until the latter part of the following February, the plaintiff, as owner of the premises, operated it, although to its certain knowledge it was a defective oil burner which was doing all the unpleasant, uncomfortable and unhealthy things which appear in the report. In over two months, as far as the evidence is concerned, there is nothing that the defendant did to remedy the upsetting conditions except to write three letters to the contractor and to talk to him about it some. Nothing was done to insist upon the landlord’s rights under the contract, or to oust the contractor, or to substitute some other heating device, or to provide the tenants temporarily with other habitation. This absence of action and constant neglect on his part continued despite the duty he owed the tenants to provide and maintain premises reasonably safe.
The oil burner was installed by the contractor, but the trial judge found as fact that the “smoke, soot and gas fumes continuously came from the boiler and the oil burner operated by the plaintiff.” What the defendant complains of is not an improper installation by the contractor but the negligence of the plaintiff in operating it continuously with no regard for the disastrous effects upon the tenants. It is not the negligence of the independent contractor which is relied upon as a basis of the claim of eviction, but the negligence of the landlord in persistently using a defective oil burner.
*396 We are of opinion that there was ample evidence of the plaintiff’s negligence, irrespective of any negligence of the contractor. Ferguson v. Ashkenazy, 307 Mass. 197, at 201.
No prejudicial error appearing in the denial of the several requests, the report is to be dismissed.