464

Meyer Vesell, Plaintiff, *v.* David Reisfield, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District,
July 31, 1934.

*Arnstein & Levy,* for the plaintiff.

*Harry Sporn,* for the defendant.

Lewis, David C., J.  The plaintiff, as lessor, and the defendant, as lessee, on the 18th day of December, 1933, signed, sealed and executed a lease covering certain premises in the city of New York for a term commencing January 1, 1934, and expiring April 30, 1939, at a stated rental stipulated to be paid upon the first day of each and every month during the term, in advance.  The defendant entered into occupancy in September, 1933, and continued until June 20, 1934, when he vacated.

The plaintiff sues upon the lease for rent for the month of June, 1934.

The defendant seeks to avoid liability upon three grounds: (1) Rescission for fraud in the making of the lease; (2) a constructive

eviction; (3) a counterclaim for $716.67 for alleged damages sustained through the alleged fraud.

The alleged facts upon which the defendant rests his contentions are substantially as follows:

That prior to and during the negotiations for the lease the plaintiff advised the defendant that the store and premises was suitable for the conduct of a retail liquor and wine store and that the temperature was equal and cool. The plaintiff knew that there was a boiler directly underneath the store premises and that a great amount of heat was daily generated into the store by the boiler and that such heat would cause the stock of wine and liquor to become deteriorated. That the plaintiff concealed the presence of the boiler from the defendant.

That the defendant relied upon the representations of the plaintiff that the premises were fit and suitable for the conduct and sale of wine and liquor and, induced by said representations, entered into the lease, and in December, 1933, entered into possession. That immediately thereafter the defendant observed an abnormal and unusual amount of heat being generated into the premises from the cellar beneath, and thereupon advised the plaintiff that he could not conduct a wine and liquor store under such abnormal conditions.

That said conditions continued during the month of February, March, April, May and June, 1934, and that defendant vacated the premises in June, 1934.

To decide the question of fraud the court must look to the alleged conduct of the parties upon the inception of the lease. However, the right to specific relief may also depend upon the subsequent conduct of the parties.

Unless the plaintiff's conduct then (at the beginning) was wrong, the defendant cannot now be right. Unless there be *delictum*, there cannot be fraud.

The law warned the defendant that there was no implied covenant that the demised premises were suitable for the purpose for which they were being hired. The written lease contained no such warranty. None can be added by any alleged oral understanding. Can we add it via fraud?

In the case of a lessor and lessee of a house, both parties before the lease is granted and accepted, ascertain for themselves the condition of the premises and they then enter such express covenants as they may think fit for the repair of the premises, or for any other purpose incidental to the enjoyment of the premises. " In Thompson on Negligence, 323, the learned author, citing many cases, says that in the absence of fraud or deceit, ' there is no implied

30

covenant that the demised premises are fit for occupation or the particular use which the tenant intends to make of them.'" (*Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245, at p. 248.)

In the case of *Scheffler Press* v. *Perlman* (130 App. Div. 576) we read: "' It is a universal rule, to which no exception can be found in any case now regarded as authority, that upon the demise of real estate there is no implied warranty that the property is fit for occupation, or suitable for the use or purpose for which it is hired.'" (See, also, *Edwards* v. *McLean*, 122 N. Y. 302.)

Plaintiff owed the defendant no affirmative duty of disclosure or enlightenment.

Therefore, unless the law construes the plaintiff's conduct as tantamount to fraud, the misfortune which the defendant claims he suffered at the plaintiff's hands, cannot be laid at the plaintiff's feet.

Defendant does not claim any actual concealment of the physical conditions of the premises, and the papers disclose no constructive camouflage.

Here we have no hidden or disguised defects. The system for steam heat or hot water stood forth visible to all who cared or cautioned to look. It had been in that basement in actual use for at least over twelve years. And the basement, I take it, was the customary normal berth for such appurtenances. Although defendant intimates his ignorance of this fact up to February, 1934, he did not vacate until June, 1934.

But to hold the defendant was ignorant of these facts, does not make the plaintiff guilty of fraud.

And aside from the insufficiency of these acts to constitute fraud — once knowledge supplanted ignorance — the defendant faced the duty to rescind.

With knowledge of the condition, the defendant continued in use and occupancy of the premises for six consecutive months and also paid rent, under this lease. Thus having affirmed the bargain, he cannot now repudiate it.

In *Gould* v. *Cayuga County National Bank* (86 N. Y. 75, 82) the court said: " When must the rescission and repudiation of the fraudulent contract be made to enable the defrauded party to recover what he has parted with under the contract? Promptly upon the discovery of the fraud. A return of the property which he obtained under the contract is part of the act of rescission. So long as the contract remains unrescinded it binds both parties." (Quoted in McAdam on Landlord & Tenant [3d ed.], p. 319.) (See, also, *Cochran* v. *Scherer*, 117 Misc. 765; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 N. Y. 263.)

The first separate defense, therefore, falls.

Looking at the defense of constructive eviction, the query arises, Does the alleged constructive eviction depend essentially and exclusively upon the location of the steam heat or hot water plant directly under the store, or is it also constituted of the claim that the abnormal operation maintained by the landlord rendered the store untenantable?

While the affidavits of the defendant submitted on this motion neglect this theory, his answer apparently adopts it. Here again the plaintiff plays up the delay of the defendant in moving out. But, in considering the effect of defendant's tardy removal upon his right to claim a constructive eviction, the law envisions all the circumstances. Defendant had to procure consent from the A. B. C. Board to transfer his business. Public bodies are not always presumed to work with clock-like dispatch. Hence I would not hold arbitrarily that here the delay was, or was not fatal. That remains an open issue.

But the defendant did not vacate until after the June rent was due. Hence the June rent must be paid. The second defense is, therefore, eliminated.

Defendant's counterclaim is restricted to fraud. While this field of the law covers a broad territory, a party must stake out his claim within the limited precincts.

In the counterclaim as it is now pleaded, the defendant founds his claim upon the alleged fact that the unsuitability of the premises compelled him to move. And he seeks recoupment of his expenses for installing fixtures in the other store, to which he removed, plus the cost of transferring his liquor license.

Those damages look to rescission. If defendant by remaining in possession till June, and in paying the rent up to then had ratified the lease, he cannot now rescind it.

At this time, therefore, the motion for summary judgment should be granted, without prejudice to any rights, if any, that the defendant may have, other than those embraced within the answer as it now stands.

Motion granted accordingly, with ten dollars costs. Ten days' stay.