Herbert E. Henion, J.
Motion by the plaintiffs, hereinafter designated as landlords, for an order directing summary judgment against the defendants, hereinafter designated as tenants. The action is based on a claim for rent due, and a prorata share of a bill for water charges pursuant to the terms of a lease. The lease bears the date of January 17, 1962, and provides for the rental of the second floor apartment in a private dwelling for a 16-month period. The tenants entered into possession on February 1,1962. Approximately six weeks later, and on March 13, 1962, the attorneys for the tenants addressed a letter to the landlords complaining that the heating system was inadequate, that there were window drafts, and the premises lacked insulation; that consequently the premises were “untenantable ”; the letter sought the exchange of general releases between the parties.
*1078 The attorneys for the landlords, by letter of March 14, 1962 which, while denying the complaints and assertions in the tenants’ letter, offered to accept from the tenants a surrender of the premises. The tenants were granted permission to vacate either on or before April 1, 1962, or at the end of the month of April, 1962. It is a fact not disputed that the tenants did not act on the consent of the landlords to accept surrender of the demised premises. It does not appear any further action on the offer of mutual rescission was taken by the tenants, and it is conceded they continued in possession until sometime in August, 1962. The landlords instituted suit in the Justice Court of the Town of Bamapo and after trial recovered judgment for the same relief herein sought. The tenants thereupon appealed and now seek to have the issues retried de nova in this court.
The tenants assert by way of defense (1) that there must be read in the lease an implied obligation by the landlords to furnish sufficient heat, and that the claimed failure to perform that duty breached the lease agreement, thereby resulting in a constructive eviction; (2) that the landlords fraudulently represented that the premises were “warm, habitable” and ‘‘ tenantable ”; the classic elements of fraud are set forth; however, while there is a claim of detriment, it is not specified, nor is there set forth either in the answer or the tenants’ bill of particulars in what respect the tenants were harmed; (3) the remaining defenses set up a failure and refusal of the landlords to use reasonable efforts to relet the premises and thus minimize damages. There is also interposed as a partial defense the deposit of one month’s rent, which security the landlords still retain.
Considering the defenses in order; the contention of an implied covenant to furnish heat that forms the first defense is not supported by the facts in the record and the law. The lease in question is a standard form of apartment lease, it is printed and contains 13 provisions followed by 5 typed provisions. One looks in vain for any clause or covenant in the agreement by which either, expressly or impliedly, the landlords could be deemed to have contracted to furnish any type or quantity of heat; nor is there mention of any promise to weatherstrip or repair windows, or insulate the premises. The written lease is neither uncertain nor ambiguous; it is devoid of any phrase or sentence from which the implication could be drawn that the subject of heat was discussed by the parties.
The authorities uniformly hold that the implication sought to be drawn here by the tenants may not be so inferred. Basch on Landlord and Tenant (vol, 1, § 498, p. 435) states: “ ‘ It is a *1079 universal rule ’ said Earl, J., ‘ to which no exception can be found in any case now regarded as authority, that upon the demise of real estate there is no implied warranty that the property is fit for occupation, or suitable for the use or purpose for which it is hired.’” (Citing cases.) And at page 436: ‘ ‘ In other words a rule similar to that of caveat emptor applies to leasing of real property, and throws upon a tenant the responsibility of examining the demised premises for defects, and providing against their consequences before he enters into the lease. A tenant assumes all of the risks arising from the condition of the premises at the inception of the lease, unless he has an express agreement on the part of his landlord in relation thereto.” (See, also, Richmond v. Lee, 123 App. Div. 279, 281; Jackson v. Paterno, 58 Misc. 201; Martens v. Sloane, 132 App. Div. 114.)
The memorandum submitted by the attorneys for the tenants on this motion contains eases which are readily distinguishable from the instant case. The distinction being that the subject apartment was not heated by a central heating plant within the exclusive control of the landlords. In such situation the lease would carry the implied obligation to have the premises properly heated. It is undisputed here that the heating facilities of the tenants were separate from that of the apartment by the landlord; they were separate systems, with individual thermostatic settings and radiators, and the tenants’ facilities were entirely under their own operation and control. There is no indication in what respect the system of the tenants was claimed to be inadequate or defective. Under the circumstances outlined and the authorities, this court concludes that the landlords were under no duty to furnish what the tenants considered sufficient heat to the demised premises.
There is still a further answer to this defense. A constructive eviction, as claimed here, requires an abandonment of the premises without unreasonable delay. (Herstein Co. v. Columbia Pictures Corp., 4 N Y 2d 117; Boreel v. Lawton, 90 N. Y. 293; City of New York v. Pike Realty Corp., 247 N. Y. 245, 247; Two Rector St. Corp. v. Rein, 226 App. Div. 73; Vessell v. Reisfield, 152 Misc. 464, 466; Spoken Realty Corp. v. Raddock, 150 N. Y. S. 2d 835; Bliss v. Clark, 104 Misc. 543, 545.) The landlords made it abundantly clear that they would consent to a rescission of the lease, and the tenants’ offer to surrender, and the acceptance by the landlords placed the tenants under the obligation to relinquish possession of the premises. It is well established that the tenants were required to act promptly or else they forfeited the right of rescission. Continuance in *1080 possession for a five and one-half-month period cannot he held to he a prompt act of acceptance. It is arguable that in the event of a claimed breach, the tenants could have waived their right to vacate, but assuming that a forfeiture did occur, the action of the tenants in holding possession for the period mentioned, and the continued payment of rent can be considered as a reinstatement of the lease with full force and effect as if no forfeiture had ever taken place. The tenants must exercise their option to abandon within a reasonable time after discovering the untenantable condition of the premises. Moreover, it is difficult for the court to believe that in the month of July, 1962, a lack of adequate heat would be seriously proposed as the basis of a constructive eviction and consequent abrogation of the lease.
Regarding the second affirmative defense, the instrument must be given a practical construction and where provisions are made and agreements reached which later are incorporated by typed additions to those already printed, some substantial proof must be proffered that the agreement lacks the complete contract. More so, in the subject case, where the lease is silent on what the tenants claim was an essential feature, namely, “ sufficient ” heat. If adequate warmth of the apartment were a motivating factor in the negotiations leading to the lease, it would seem to the court that such a consideraiton would have been so expressed in the lease.
In any event, where the plaintiffs on a motion for summary judgment have made out a prima facie case, it is incumbent upon the tenants to submit proof of a defense and to show that the matters set up in the answer are real and that they are capable of being established upon a trial. The evidence submitted with regard to the false and fraudulent representations falls far short of such proof. The tenants have not established harm or detriment. What is further determinative of this issue, as in the first affirmative defense, is the failure of the tenants, following discovery of the claimed fraudulent representations, to act within a reasonable time to rescind or disaffirm the agreement. The tenants if they believed that the landlords had deceived and defrauded, and by means of misrepresentations had induced the lease were free to repudiate it or abandon the premises. Their continuing in possession, and payment of rent after acquiring knowledge of the fraud can only be considered as a waiver of the right to disaffirm. (Pryor v. Foster, 130 N. Y. 171; Daly v. Wise, 132 N. Y. 306.) Furthermore, as previously stated herein, the tenants were given opportunity to exchange releases with the landlords, thus mutually abrogating the lease.
*1081 The defenses, namely, that the landlords failed to use reasonable efforts to relet the premises, do not go to the merits but are interposed in an effort to mitigate damages. The lease by paragraph 6 provided that the landlords had the option of reletting at the best rent possible, crediting the rent received to the tenants’ account, and holding them for any deficiency. The meaning and intent is clear. There was no obligation on the landlords to relet. (Gray v. Kaufman Dairy & Ice Cream Co., 9 App. Div. 115, 119; Sancourt Realty Corp. v. Dowling, 220 App. Div. 660.) That clause of the agreement did not deprive the owners of the property of the right to reasonably reject those whom they considered might be objectionable or not desirous as tenants. The claim of the tenants that the landlords failed to act in good faith, or arbitrarily refused to accept applicants for the apartment is entirely lacking in proof and is moreover unavailable as an issue in the case. Motion for summary judgment is granted in accordance herewith.